# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 19, 2008 Session

## MATTIE PIANA, ET AL. v. OLD TOWN OF JACKSON, ET AL.

### Direct Appeal from the Circuit Court for Madison County
### No. C-03-225        Roger A. Page, Judge

### No. W2007-02832-COA-R3-CV - Filed February 6, 2009

This is an wrongful death action arising under a theory of premises liability. Plaintiff's husband died as a result of injuries he sustained after tripping over a piece of concrete embedded in a dirt path. Plaintiff alleged that two of the defendants, who were under a  separate maintenance contract with the owner of the property, failed to exercise the required due care in the maintance, inspection, and repairs of the path. The trial court granted directed verdicts for both defendants after finding that neither owed a duty to Plaintiff's husband. We agree that defendant Brooks Shaw did not have a duty to maintain the path. However, we have determined that defendant Town and Country did owe a duty to Plaintiff's husband. Viewing the evidence in the light most favorable to the plaintiff, we find that there are genuine issues of material fact for the jury to decide. We therefore reverse and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

David W. Camp, Jackson, TN, for Appellant, Mattie Piana, et al.

David I. Feigelson, Memphis, TN, for Appellee, Brooks Shaw & Son Old Country Store Inc.
Kyle C. Atkins and Terri Smith Crider, Humboldt, TN, for Appellee, Town and Country Property Management

## OPINION

Facts and Procedural History

In 1978, Defendants Old Town of Jackson, Inc. ("Old Town") and Brooks Shaw & Son Old Country Store, Inc. ("Brooks Shaw") began constructing the commercial development known as Casey Jones Village in Jackson, Tennessee. Casey Jones Village consists of four acres. Old Town owns one acre, and Brooks Shaw owns the other three. Old Town's one acre lot lies directly north of property owned by Defendants Donald G. Taylor and Brenda Taylor d/b/a Days Inn of Jackson ("Days Inn").

Prior to 1999, there was a thirty-five foot ditch on the southern part of Old Town's property. Then, the City of Jackson installed an eight foot culvert and partially filled the ditch. Afterwards, customers walked over a dirt path, created by foot traffic, on the ditch to approach Casey Jones Village from the Days Inn hotel. The path is located on Old Town's property.

In 1984, J. Reginald Smith, on behalf of Old Town, and Clark Shaw, on behalf of Brooks Shaw, orally entered into a maintenance agreement. Under the agreement, each party would take care of its own buildings. Brooks Shaw also agreed to maintain the common grounds of Casey Jones Village. Mr. Smith testified that the common grounds consisted of "the parking lot, the flower beds, and the grassy areas on the edge of the buildings." When the agreement was reached, the dirt path did not exist. After 1999, Brooks Shaw did not inspect or perform maintenance on either the ditch or the path, and Mr. Smith did not ask Brooks Shaw to do so.

In 1993, Old Town entered into a written agreement with Defendant Town and Country Property Management, Inc. ("Town and Country").[1] Under the contract, Town and Country agreed to maintain and manage all of Old Town's property at Casey Jones Village. The agreement specifically authorized Town and Country to make "all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operation efficiency of the Premises." Because Brooks Shaw also had maintenance obligations, the agreement did not require Town and Country to maintain the parking lot. Town and Country's primary obligation under the agreement was to maintain Old Town's building and to collect rent from tenants. Mr. Smith did not specifically discuss the maintenance of the ditch with Town and Country.

Frank Piana, Sr., his wife, Mattie, and their grandson were guests at Days Inn in July 2002. On July 13, 2002, Mr. Piana wanted to take his grandson to play miniature golf at Casey Jones Village. They left the hotel and began crossing the dirt path between the hotel and the Village. While crossing the path, Mr. Piana tripped over a small piece of concrete that was covered by grass. He suffered severe injuries and ultimately died from those injuries on April 25, 2003.

On July 3, 2003, Mattie Piana, individually and as Mr. Piana's personal representative, filed a Complaint in the Madison Country Circuit Court. The Complaint alleged negligence on the part of several Defendants: Old Town, Brooks Shaw, the City of Jackson, Days Inn, and Town and Country. With respect to Brooks Shaw and Town and Country, Ms. Piana alleged that they failed to exercise the required due care in the maintenance, inspection, and repair of the dirt path and/or

---

[1] In addition to owning Old Town, Mr. Smith has a fifty percent ownership interest in Town and Country.

to properly warn Mr. Piana of the dangers existing on that path. The City of Jackson and several other defendants were granted summary judgment and are not parties to this appeal. Likewise, Ms. Piana reached a settlement with Old Town prior to trial

At trial, three defendants remained: Days Inn, Brooks Shaw, and Town and Country. At the close of Plaintiff's proof, all three defendants moved for directed verdicts. The trial court took the motions under advisement, and Town and Country presented its proof. When Town and Country concluded, the trial court granted directed verdicts for both Town and Country and Brooks Shaw.[2] The trial court found that Brooks Shaw did not owe a duty to the Plaintiff because it neither owned nor maintained the premises where Mr. Piana fell. Similarly, the trial court found that Town and Country did not owe a duty to Mr. Piana. The trial court stated that any duty owed by Town and Country must stem from the terms of its maintenance agreement with Old Town. After examining those terms, the trial court concluded that Town and Country was not obligated to inspect or repair the dirt path on Old Town's property.

As the sole remaining Defendant, Days Inn presented its proof, and the case was submitted to the jury. The jury only considered the fault of Mr. Piana, Old Town, the City of Jackson, and Days Inn. The jury attributed 70% of the fault to Old Town and 30% to Mr. Piana. The jury also found $3,000,000 in damages. The plaintiff, however, had already settled with Old Town, and therefore, could not recover additional damages based upon the jury verdict.

Ms. Piana now appeals the trial court's decision to grant directed verdicts for Brooks Shaw and Town and Country

## Standard of Review

A trial court's decision to grant a motion for directed verdict involves a question of law. ***Underwood v. HCA Health Servs. of Tennessee, Inc.***, 892 S.W.2d 423, 425 (Tenn. Ct. App. 1994). On appeal, we apply the same standard used by the trial court when ruling on the motion initially. ***United Brake Sys., Inc. v. Am. Envtl. Prot., Inc.***, 963 S.W.2d 749, 754 (Tenn. Ct. App. 1997). Accordingly, we do not weigh the evidence or evaluate the credibility of witnesses. ***Id***. (citing ***Underwood***, 892 S.W.2d at 425). Rather, we consider all of the evidence, taking the strongest legitimate view of it in the non-moving party's favor. ***Eaton v. McLain***, 891 S.W.2d 587, 590 (Tenn. 1994). The court should grant the motion, "only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." ***Id***.

## Law and Analysis

---

[2]Because Days Inn had not yet presented its proof, the trial court should have waited, pursuant to Tenn. R. Civ. P. 50.01, to rule on the motions for directed verdict. None of the parties, however, raised an objection at trial or raises the issue on appeal. We simply note the procedural misstep but find any error waived. *See **Yeubanks v. Methodist Healthcare-Memphis Hosps.***, No. W2001-02051-COA-R3-CV, 2003 WL 21392411, at *7-8 (Tenn. Ct. App. June 10, 2003).

A negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. **Hale v. Ostrow**, 166 S.W.3d 713, 716 (Tenn. 2005); **Coln v. City of Savannah**, 966 S.W.2d 34, 39 (Tenn. 1998).

The focus in the present case is on the first element of negligence, the duty of care. The existence of a duty is a question of law. **Hale**, 166 S.W.3d at 716; **Coln**, 966 S.W.2d at 39. Legal duty has been defined as the legal obligation owed by a defendant to a plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm. **West v. East Tennessee Pioneer Oil Co.**, 172 S.W.3d 545, 551 (Tenn. 2005). A "risk is unreasonable and gives rise to a duty to act with due care if the forseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." **McCall v. Wilder**, 913 S.W.2d 150, 153 (Tenn. 1995). When deciding whether a duty is owed in a specific case, "courts apply a balancing approach, based upon principles of fairness, to identify whether the risk to the plaintiff was unreasonable." **Burroughs v. Magee**, 118 S.W.3d 323, 328-29 (Tenn. 2003). When balancing the relevant factors, the "forseeability prong is paramount because 'forseeability is the test of negligence.'" **Hale**, 166 S.W.3d at 716-17 (quoting **Biscan v. Brown**, 160 S.W.3d 462, 480 (Tenn. 2005).

A.  Brooks Shaw

The trial court found that Brooks Shaw did not owe a duty to Mr. Piana because the common maintenance agreement between Brooks Shaw and Old Town did not require Brooks Shaw to maintain the ditch area or the path. Brooks Shaw did not own the property on which Mr. Piana fell. Accordingly, Brooks Shaw could not owe a duty to Mr. Piana as the owner of the premises. *See* **Hale**, 166 S.W.3d at 717-18; **Benson v. H.G. Hill Stores, Inc.**, 699 S.W.2d 560, 562 (Tenn. Ct. App. 1985). Therefore, the trial court correctly concluded that any duty Brooks Shaw might owe to Mr. Piana must stem from its common maintenance agreement with Old Town.

The oral agreement between Brooks Shaw and Old Town was reached in 1984. The agreement required Brooks Shaw to maintain its building and the "common grounds." The path along the ditch, however, did not exist in 1984; it was created by pedestrians after the ditch was filled in by the City of Jackson in 1989. In 1984, neither Brooks Shaw nor Old Town could have possibly contemplated the maintenance of a path that did not yet exist.

Ms. Piana insists that Brooks Shaw undertook a duty to maintain the path because Brooks Shaw occasionally performed maintenance on areas owned by Old Town. When it did so, Brooks Shaw could seek reimbursement from Town and Country for twenty five percent of the cost of the repairs. Accordingly, Brooks Shaw could have inspected and repaired the path. Because of this possibility, Ms. Piana argues that Brooks Shaw undertook a duty to do so.

This Court, however, rejected a similar argument in ***Thompson v. Ruby Tuesday, Inc.***, No. M2004-01869-COA-R3-CV, 2006 WL 468724 (Tenn. Ct. App. Feb. 27, 2006). In ***Thompson***, the defendant was bound to a lease agreement under which it had the right to repair a common area owned by its lessor. ***Id***., at *6. This Court found that a contractual right to repair is not synonymous with a legal duty. ***Id***. Here, Brooks Shaw also had the right to enter Old Town's property and maintain the dirt path. This right, however, did not place a duty upon Brooks Shaw to protect guests on Old Town's property. Instead, we find that Old Town retained this duty as the owner of the premises.

Next, Ms. Piana contends that Brooks Shaw was a "possessor" of the property and thus liable to the same extent as the owner. To support this contention, Ms. Piana relies on this Court's decision in ***Smith v. Inman Realty Co.***, 846 S.W.2d 819 (Tenn. Ct. App. 1992). In ***Smith***, we held that a realtor, who showed a house under a listing agreement with the owner, had the same duty of care to an invitee as would the owner. ***Id***. at 823. To reach this conclusion, the Court found that the realtor was a "possessor" of the property as defined by the Restatement (Second) of Torts § 328(E) (1965). Section 328(E) provides:

> A possessor of land is
> (a) a person who is in occupation of the land with intent to control it or
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Ms. Piana, however, did not present evidence showing that Brooks Shaw is a "possessor" of the relevant property under this definition. The realtor, in ***Smith***, had the right to enter the property and actually took an invitee onto the property. ***Smith***, 846 S.W.2d at 823. Brooks Shaw, on the other hand, did not have any relationship with Mr. Piana. Furthermore, the maintenance agreement between Brooks Shaw and Old Town did not give Brooks Shaw the exclusive right to maintain any property other than its own building and the parking lot. Accordingly, Brooks Shaw is not a "possessor" under Section 328(E), and ***Smith*** is inapplicable.

Having reviewed the facts in the light most favorable to Ms. Piana, we find that the trial court did not err when granting a directed verdict in favor of Brooks Shaw. Brooks Shaw did not own the property where the injury occurred or where the alleged defective condition existed. Nor did Brooks Shaw undertake a duty, under its maintenance agreement with Old Town, to inspect or repair the dirt path. Therefore, the trial court properly granted Brooks Shaw's motion for directed verdict.

B. Town and Country

The trial court found that Town and Country did not owe a duty to Mr. Piana. To reach this conclusion, the trial court considered the Management Agreement between Old Town and Town and Country. The agreement described the property to be managed as "40 Casey Jones Village, Old

Town," which is simply the address for Old Town. Town and Country's authority, with respect to inspections and repairs, comes from section 6(b) of the agreement:

> Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operation efficiency of the Premises; and all alterations required to comply with lease requirements, governmental materials, supplies and other items necessary for the management, maintenance or operation of the Premises.

The trial court analyzed this paragraph and concluded that it "does not contemplate inspecting the dirt path to see if there is a one-and-a-half inch piece of concrete in it covered by grass." Accordingly, the trial court granted a directed verdict in favor of Town and Country.

Liability in cases like this one follows the right to control the premises. Because Old Town is the sole owner of the property, the trial court correctly found that the terms of the Management Agreement define Town and Country's right to control the property. The trial court then implicitly found that Town and Country had the right to control the dirt path. However, Town and Country did not owe a duty to Mr. Piana because the danger and potential harm was not forseeable. On appeal, Town and Country first argues that it did not owe a duty to Mr. Piana because it was not required to perform any maintenance on the ditch

Accordingly, our first task is to determine the extent of Town and Country's obligations under the Management Agreement. Tennessee courts have examined similar written agreements to determine whether a party has a duty to inspect or maintain a piece of property. *Thompson*, 2006 WL 468724, at *5); *Denton v. Hahn*, No. M2003-00342-COA-R3-CV, 2004 WL 2083711, at *8 (Tenn. Ct. App. Sept. 16, 2004). The interpretation of a written agreement–here, the Management Agreement–is a matter of law. *Guiliano v. CLEO, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). When interpreting the written agreement, our primary task is to ascertain the intention of the parties. *Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn. Ct. App. 1991). We must consider the words of the instrument in the context of the instrument as a whole and give those words their usual, natural, and ordinary meaning. *Ballard v. North Am. Life & Cas. Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983); *Barber v. Westmoreland*, 601 S.W.2d 712, 714 (Tenn. Ct. App. 1980).

The premises described in the Management Agreement is Old Town's address at Casey Jones Village. The description itself does not limit Town and Country's obligations to Old Town's building. Town and Country argues that the Agreement excluded the ditch and path because Mr. Smith, the owner of Old Town, did not specifically request Town and Country to maintain this area. Furthermore, Town and Country did not inspect, nor was it requested to inspect, the ditch or the path when performing its annual inspections. Instead, Town and Country insists that its maintenance obligations were limited to the structural integrity of Old Town's buildings on the property.

The first question then is whether the description of the premises, "40 Casey Jones Village, Old Town," in the Management Agreement encompasses the dirt path. At trial, Mr. Smith offered contradictory statements about his understanding of the contract. At first, Mr. Smith testified that the Agreement defines the premises as the "full one acre of Old Town's property." On cross-examination, however, Mr. Smith testified that he never expected Town and Country to perform maintenance on the ditch or dirt path. Patricia Fox, the property manager for Town and Country, also testified that the terms of the agreement did not exclude any part of Old Town's property at the Casey Jones Village. Like Mr. Smith, Ms. Fox testified that Town and Country's primary obligation was to maintain the buildings on Old Town's property. Ms. Fox did not believe that Town and Country was required under the Management Agreement to maintain the dirt path behind the buildings. Finally, both Mr. Smith and Ms. Fox testified that they did not know that the dirt path was located on Old Town's property.

After examining the entire record, we conclude that the language of the Management Agreement required Town and Country to maintain the entire premises, including the dirt path on Old Town's property. Both parties to the Agreement testified that the premises described as "40 Casey Jones Village, Old Town" did not exclude the dirt path. Because the parties admit that the description is unambiguous, we must disregard their attempts at trial to limit the agreement's scope. Town and Country cannot avoid a clear contractual duty by simply claiming ignorance of the obligation. Were we to hold otherwise, other property managers could avoid liability to invitees by ignoring the unambiguous terms of their maintenance contracts. Accordingly, we agree with the trial court's implicit finding that Town and Country had an obligation under the Management Agreement to maintain all of Old Town's property at Casey Jones Village, including the path.

Next, we must determine the extent of Town and Country's authority under the Management Agreement. In *Lawrence v. HCA Health Servs. of Tennessee, Inc.*, No. M2007-01128-COA-R3-CV, 2008 WL 3451799 (Tenn. Ct. App. Aug. 12, 2008), we found that a property manager, acting under a similar contractual agreement, became the "operator" of the property that it managed. *Lawrence*, 2008 WL 3451799, at *5. Like the manager in *Lawrence*, Town and Country was authorized, in addition to its maintenance obligations, to find tenants, collect rent, and hire staff. Therefore, we conclude that Town and Country was the operator of Old Town's property at Casey Jones Village.

Like an owner, the operator of a place of business has a duty "to exercise reasonable care with regard to social guests or business invitees on the premises." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). The operator's duty "includes maintaining the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired." *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001). The operator of a premises, however, does not have a duty to "remove or warn against 'conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care.'" *Rice v. Sabir*, 979 S.W.2d 305, 309 (Tenn. 1998) (quoting W. Page Keaton, *Prosser and Keaton on Torts*, § 61 at

426 (5th ed. 1984)).  In this regard, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id*. (citation omitted).

The trial court apparently found that the piece of concrete on the path was not a condition that presented an unreasonable risk to guests.  In *Nee v. Big Creek Partners,* 106 S.W.3d 650 (Tenn. Ct. App. 2002), we described a plaintiff's evidentiary burden on this issue:

> [F]or an owner or occupier to be found negligent, there must be some evidence that there was a dangerous or defective condition on the premises. A jury cannot conclude that an owner or occupier failed to exercise reasonable care to prevent injury to persons on their property if there is no evidence of a dangerous or defective condition. If no dangerous or defective condition exists, an owner or occupier cannot be held liable for failing to take action in order to remedy the supposed condition.

*Id*. at 653-54.  Like the present case, the Court in *Nee* considered the sufficiency of the plaintiff's evidence after the trial court granted the defendant/owner's motion for directed verdict.  *Id*. at 651. In *Nee*, the plaintiff, who tripped while going down stairs on the defendant's property, simply described the accident at trial and introduced photographs of the stairs.  *Id*. at 654.  The photographs were an accurate representation of the stairs, but standing alone, did not show that there was anything wrong with the stairs.  *Id*. Accordingly, we affirmed the verdict because "[a] finding that the steps were defective or dangerous based on the photographs would require the jury to engage in speculation, conjecture, and guesswork." *Id*.

The evidence presented by Ms. Piana is similar to the plaintiff's evidence in Nee.  Ms. Piana testified about the condition of the path and introduced photographs showing the piece of concrete. Considering this evidence in the light most favorable to Ms. Piana, we find that there was sufficient evidence for a jury to decide if the condition was dangerous or defective.  Unlike the plaintiff's photographs in Nee, Ms. Piana showed that the piece of concrete itself could be a dangerous condition.  Accordingly, a reasonable person could find that the condition was dangerous without engaging in speculation or guesswork.  Because reasonable persons could draw conflicting conclusions from this evidence, the issue should have been submitted to the jury rather than being settled by directed verdict.

Finally, we must address whether Ms. Piana presented sufficient evidence showing that Town and Country had notice of the condition.  If the plaintiff alleges that an owner or operator of the premises allowed a dangerous or defective condition to exist on the premises, the plaintiff must prove, in addition to the elements of negligence, that: "1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004).  Ms. Piana has not alleged that Town and Country created the condition.  Likewise, she has not alleged that Town and Country had actual notice that the condition existed prior to the accident. Therefore,

she was required to present evidence showing that Town and Country had constructive notice of the condition.

A plaintiff may prove constructive notice by showing that "the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." **Blair**, 130 S.W.3d at 764 (citing **Simmons v. Sears, Roebuck & Co.**, 713 S.W.2d 640, 641 (Tenn. 1986). Alternatively, the plaintiff may prove constructive notice by showing "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." **Blair**, 130 S.W.3d at 765-66. If notice is proven, the owner takes on a duty "to take reasonable steps to remedy this commonly occurring dangerous condition." **Id**. at 766. Ms. Piana only presented evidence that the condition had existed for such a length of time that Town and Country should have been aware of it.

Although the issue of duty is a question of law for the court to decide, "it is generally for the jury to say whether the condition causing the injury...had existed long enough that a reasonable man exercising reasonable care would have discovered it." **Allison v. Blount Nat. Bank**, 390 S.W.2d 716, 719 (Tenn. Ct. App. 1965). Before the question can go to the jury, however, the plaintiff must present "some material competent evidence from which it can be logically inferred [that] the proprietor, by the exercise of ordinary care, would have or should have discovered the dangerous condition." **Paradiso v. Kroger**, 499 S.W.2d 78, 80 (Tenn. Ct. App. 1973); *see also* **Chambliss v. Shoney's Inc.**, 742 S.W.2d 271, 273 (Tenn. Ct. App. 1987) ("When there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements.").

At trial, Ms. Piana testified that she had seen the piece of concrete on the path several times prior to the accident. She did not specify any precise dates, but she stated that the piece of concrete had been on the path for at least a few years. During her previous visits, the concrete was clearly visible, but at the time of the accident, it had been covered by grass. Reviewing this evidence in the light most favorable to the plaintiff, we find that the question of notice should have been submitted to the jury. Ms. Piana presented uncontradicted testimony that the defect had existed for several years prior to the accident. While her testimony lacked specificity, it is for the jury to evaluate the quality and reliability of her statements. By preempting the jury's review of this question, the trial court erred. When considering a motion for directed verdict, the trial court is not permitted to weigh, let alone disregard, material evidence presented by the non-moving party.

For these reasons, we remand this matter to the trial court. We have determined, as a matter of law, that Town and Country owed a duty to Mr. Piana. We have not determined that the concrete constituted a dangerous condition or that Town and Country had notice of the condition. We have only determined that Ms. Piana presented sufficient evidence for a jury to consider these questions.

Conclusion

Based upon the foregoing reasons, we affirm the trial court's grant of directed verdict in favor of Brooks Shaw. However, we reverse the trial court's grant of directed verdict in favor of Town and Country. This case is hereby remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed equally to Ms. Piana and Town and Country, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, J.