IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 17, 2013 Session

**RICK P. NEWMAN v. THE KROGER COMPANY**

**Appeal from the Circuit Court for Shelby County**
**No. CT00273310     Robert Samual Weiss, Judge**

---

**No. W2013-00296-COA-R3-CV - Filed September 17, 2013**

---

This is a slip and fall case. Plaintiff sued The Kroger Company after he fell in a puddle of water near a freezer at a local Kroger store. The trial court granted Kroger's motion for summary judgment, but failed to include findings indicating the reason for its decision. We find that summary judgment was inappropriate and therefore reverse the trial court's decision and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S, delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Bruce D. Brooke, Memphis, Tennessee, for the appellant, Rick P. Newman

Betty Ann Milligan, Bradford J. Spicer, Memphis, Tennessee, for the appellee, The Kroger Company

## I.  FACTS & PROCEDURAL HISTORY

The Kroger Company owns, maintains, and operates a Kroger grocery store on Germantown Parkway in Cordova, Tennessee.  On June 1, 2009, Rick Newman ("Plaintiff") was shopping at the aforementioned Kroger store, near the meat department, when he slipped in a puddle of water and fell.  Plaintiff was briefly rendered unconscious, and he was transported by ambulance to a local hospital.

On May 28, 2010, Plaintiff filed this lawsuit against The Kroger Company ("Defendant" or "Kroger"), alleging negligence and seeking to recover for injuries he allegedly sustained as a result of his slip and fall.  Plaintiff's complaint alleged that the puddle of water "was allowed to be present on [Kroger's] floor without notice or warning to Plaintiff or other customers and the failure to remove the foreign substance directly and proximately caused the accident and Plaintiff[']s resulting injuries and damages."  Plaintiff specifically alleged that one of the coolers in Kroger's meat department "was leaking water or fluid onto the floor."[2]  Plaintiff alleged that Kroger was negligent in maintaining its premises by failing to discover and remove the dangerous condition, and by "fail[ing] to maintain its equipment in proper working order to avoid leakage of liquids onto the adjacent floor."  He claimed that Kroger "had or should have had actual and/or constructive knowledge of the dangerous condition on the premises."

Kroger filed an answer denying any negligence, and discovery ensued.  Kroger then filed a motion for summary judgment.  Kroger argued, "Assuming that a dangerous condition did, in fact, exist on Defendant's premises, Plaintiff cannot prove that Defendant had knowledge, either actual or constructive, of the alleged dangerous condition and therefore Defendant cannot be held liable in this cause."  Kroger pointed to Plaintiff's deposition testimony in which he admitted that he did not know the source of the water (other than his

---

[1]  Rule 10 of the Rules of the Court of Appeals of Tennessee states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]  Plaintiff fell immediately across from the meat department, beside the type of freezer that is open on top, with no lid, so that customers simply reach down into the freezer to select products.  According to testimony given in this case, this type of freezer is sometimes referred to as a "coffin case" or "coffin cooler."

suspicion that it came from the nearby cooler), he did not know how long the water had been present on the floor, and he did not have any information to prove that Kroger was aware of the puddle of water prior to the incident.

Kroger also submitted the affidavit of its store co-manager, Vicki Audirsch, who was on duty on the day of the incident. Ms. Audirsch stated that she and a former district manager had performed "a store walk through and visual inspection of the area in which [Plaintiff] alleges that he fell," a mere five minutes before the incident occurred. She stated that her inspection of the area revealed "that the floor was clean, clear, and dry" at that time. Ms. Audirsch said that when she approached Plaintiff after his fall, minutes later, she observed "a small, isolated, saucer sized amount of water underneath [his] head," but his clothes were "completely dry." Ms. Audirsch stated that "[t]he isolated, small amount of water was approximately eighteen (18) inches away from the nearest cooler or freezer case and there was no liquid trail leading from the case to the saucer sized spot of water." Ms. Audirsch also stated that she "inspected all equipment near the area of the fall and discovered that all were functioning properly. No leakage of any sort was observed whatsoever." Ms. Audirsch stated, "To my knowledge, no Kroger employees were aware of any substance being present on the floor at the time that Mr. Newman alleges he slipped and fell."

In its motion for summary judgment, Kroger acknowledged that a plaintiff who alleges that an owner or operator of premises allowed a dangerous or defective condition to exist must prove, in addition to the elements of negligence, either (1) that the condition was caused or created by the owner, operator, or his agent, *or* (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996). Kroger argued, "In this case, it is this 'notice' element upon which Plaintiff has failed to carry his burden in order to establish his prima facie case." First, Kroger argued that Plaintiff could not prove that Kroger caused or created the condition because Plaintiff admitted that he had no personal knowledge to confirm the source of the water, aside from his suspicion about the leaky cooler. Next, Kroger claimed that Plaintiff could not prove actual notice because he admitted that he did not have any information to prove that Kroger was aware of the puddle of water prior to the incident, and Ms. Audirsch stated in her affidavit that, to her knowledge, no Kroger employees were aware of it. Finally, Kroger argued that Plaintiff could not prove constructive notice because of his admitted lack of knowledge regarding how long the puddle had been present, and because Ms. Audirsch testified that the area was clean and dry when she inspected it five minutes earlier. In sum, Kroger argued that Plaintiff was unable to prove that Kroger either created the dangerous condition, knew about it, or should have known about it, and therefore, summary judgment was appropriate.

In response to the motion for summary judgment, Plaintiff argued that Kroger had not affirmatively negated the element of notice, or any other essential element of his claim. With regard to Ms. Audirsch's statement in her affidavit that, "To [her] knowledge, no Kroger employees were aware of any substance being present on the floor at the time that [Plaintiff] alleges he slipped and fell," Plaintiff argued that this statement was inadmissible hearsay. He claimed that it was improper for Ms. Audirsch to testify as to what other Kroger employees knew or did not know.

Plaintiff also claimed that Ms. Audirsch's testimony was inconsistent with other evidence in various respects, and therefore, her credibility had been called into question. Plaintiff noted Ms. Audirsch's testimony that the size of the puddle was small, about the size of a saucer or a pie plate, that it was "right underneath his head," and that "all [she] had to use to wipe it up [was] a paper towel." Plaintiff submitted photographs that were taken at the accident scene by his fiancée, with her camera phone, which, according to Plaintiff, showed a significant amount of water all around him, showed that his hair, pants, and shirt were soaked, and also showed a mop near Plaintiff's head.[3] Plaintiff conceded during his deposition that he did not see the puddle before he fell, and that he could not see it after he fell, because he was lying on his back and told not to move, then placed on the stretcher by the paramedics. However, Plaintiff testified that he could feel the water while he was lying on the floor because his hair was "soaking wet," and his shirt and pants were "soaking wet" as well. He said that he was basically wet from his head to below his waistline. Plaintiff also recalled someone mopping around him. Plaintiff's fiancée similarly testified that there was water underneath Plaintiff's head and all the way down to about his belt line, and that the back of his pants was soaked. Ms. Audirsch had stated during her deposition that Plaintiff's hair was "damp and curling up," but she stated in her affidavit that Plaintiff's clothes were "completely dry."

Ms. Audirsch testified that after Plaintiff fell, she "checked all the way down, all the way down on the bottom of the freezer at that floor with my hand, and then I went back along there and felt with a paper towel," and she did not discover any liquid coming out from beneath the freezer. She said that she found a "little puddle, and it was like out from the case, but there wasn't a trail that I could see leading from the case to the puddle." However, when Ms. Audirsch was asked if she had called Kroger's "Facility" maintenance department after the fall "to request them to come out and fix that freezer," Ms. Audirsch acknowledged that she had done so, "because we wanted to make sure that everything was okay." She could not recall if the Facility department ever came out or if the freezer had to be repaired.

---

[3] The photographs in the record are of poor quality, and we express no opinion as to whether they depict the scene as Plaintiff described.

-4-

Ms. Audirsch testified during her deposition that coffin freezers do sometimes leak, and she said that if the issue went unaddressed, the puddle of water created by the leak could get "quite large," as it would "just flood everywhere." She explained that if a coffin freezer continued to leak, then an "absorbent sock" or "snake" would be placed alongside the freezer to absorb the water.[4] However, Ms. Audirsch testified that she did not remember an absorbent sock ever being placed next to the cooler where Plaintiff fell, at any time. Plaintiff had returned to the scene of his fall within a week of the incident to take photographs of the area, and those photographs clearly showed that an absorbent sock had been placed alongside the coffin freezer at issue, at the same location where Plaintiff fell. When shown these photos during her deposition, Ms. Audirsch acknowledged that the sock was placed "right at that same adjacent spot" where Plaintiff fell.

Following a hearing, the trial court entered an order granting summary judgment to Kroger. The order stated, in its entirety:

> This cause came on to be heard before the Honorable Robert Weiss, Judge of Division VIII of the Circuit Court, upon the Motion for Summary Judgment of Defendant, The Kroger Company, upon the statements of counsel for the parties, the legal briefs submitted by both parties, and upon the entire record in this cause, from all of which it appears to the Court that Defendant's Motion For Summary Judgment is well taken and should be granted;
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment on behalf of the Defendant, The Kroger Company, is hereby granted and that this cause is to be dismissed with prejudice against the Defendant at the costs of the Plaintiff.

Plaintiff filed a motion to reconsider, which was denied. He then filed a notice of appeal.

## II.   ISSUE PRESENTED

On appeal, Plaintiff contends that the trial court erred in granting Kroger's motion for summary judgment, for various reasons. For the following reasons, we reverse the decision of the circuit court and remand for further proceedings.

---

[4] Ms. Audirsch described these "absorbent socks" or "snakes" as tubes that are approximately five feet long, and about the circumference of a baseball or a softball. The tubes are filled with absorbent material, so they continue to grow larger as they absorb more water.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." **Green v. Green**, 293 S.W.3d 493, 513 (Tenn. 2009).

"The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." **Green**, 293 S.W.3d at 513 (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial."[5] **Martin**, 271 S.W.3d at 83 (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." **Id.** at 84 (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." **Id.** (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

If the moving party does make a properly supported motion, "[t]he non-moving party must then establish the existence of the essential elements of the claim." **McCarley v. West Quality Food Serv.**, 960 S.W.2d 585, 588 (Tenn. 1998). The nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. **Martin**, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215). "The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." **Id.**

---

[5] The summary judgment standard set forth in *Hannan* is applicable to this case because it was filed prior to July 1, 2011. *See* Tenn. Code Ann. § 20-16-101; **Sykes v. Chattanooga Housing Authority**, 343 S.W.3d 18, 25 n.2 (Tenn. 2011).

(citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.6). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." ***Id.*** (citing *McCarley*, 960 S.W.2d at 588).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. ***Id.*** However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." ***Id.*** (citing *Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV. DISCUSSION

Our review of the trial court's decision in this matter is hampered by the fact that the trial court did not provide any explanation justifying its decision to grant Kroger's motion for summary judgment. Tennessee Rule of Civil Procedure 56.04 specifically provides, "The trial court shall state the legal grounds upon which the court denies or grants the motion [for summary judgment], which shall be included in the order reflecting the court's ruling." The Rule's requirement of written findings is "specific and without exception." ***Burse v. Hicks***, No. W2007-02848-COA-R3-CV, 2008 WL 4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008). "When the legal grounds for the trial court's decision are omitted, a reviewing court cannot analyze the decision's validity, and appellate review becomes unnecessarily speculative." ***Id.*** The reviewing court is left to wonder on what grounds the trial court resolved the motion for summary judgment. ***Winn v. Welch Farm, LLC***, No. M2009-01595-COA-R3-CV, 2010 WL 2265451, at *5 (Tenn. Ct. App. W.S. Jun. 4, 2010).

For the sake of judicial economy, however, we will sometimes "'soldier on without guidance from the trial court.'" *See, e.g.*, ***Burse***, 2008 WL 4414718 (quoting *Church v. Perales*, 39 S.W.3d 149, 158 (Tenn. Ct. App. 2000)). At the conclusion of the summary judgment hearing in this case, the trial judge announced that he was ruling in favor of Kroger, stating, "I think in this particular situation, you know, there is a question of notice, and I don't know how – I don't know how the plaintiff can overcome that." Thus, it appears that the trial court concluded that Kroger had demonstrated that Plaintiff could not prove the essential element of notice. We disagree.

As noted above, when a plaintiff alleges that an owner or operator of the premises allowed a dangerous or defective condition to exist on the premises, "the plaintiff must prove, in addition to the elements of negligence, that: '1) the condition was caused or created by the owner, operator, or his agent, *or* 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice

that the condition existed prior to the accident.'" ***Piana v. Old Town of Jackson***, 316 S.W.3d 622, 630-31 (Tenn. Ct. App. 2009) (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)) (emphasis added). "A plaintiff is not required to prove a premises owner had prior notice of a dangerous condition if the premises owner created the condition that caused a plaintiff's injury." ***Macklin v. Dollar General Corp.***, No. W2010-01507-COA-R3-CV, 2011 WL 1714307, at *5 (Tenn. Ct. App. May 4, 2011) (citing *Longmire v. Kroger Co.*, 134 S.W.3d 186, 189 (Tenn. Ct. App. 2003)). Here, Plaintiff's complaint alleged that Kroger was negligent in failing to maintain its cooler in order to avoid its leakage of fluids onto the floor. We construe this as a basic allegation that Kroger "caused or created" the dangerous condition. Plaintiff's complaint further alleged that Kroger "had or should have had actual and/or constructive knowledge of the dangerous condition on the premises." Therefore, Kroger's motion for summary judgment must have negated all three of these potential bases of liability – creation of the condition, actual notice, and constructive notice – in order to have been properly granted. *See **Macklin***, 2011 WL 1714307, at *5-7 (holding that the trial court's order granting summary judgment on a premises liability claim did not resolve all the issues and was effectively only an order for partial summary judgment where it addressed the issue of actual notice but "it did not foreclose Plaintiff's arguments on the issues of constructive notice and creation of the dangerous condition.")

### A. Actual Notice

We will begin with the issue of actual notice. Kroger argued in its motion for summary judgment that Plaintiff could not prove that it had actual notice of the dangerous condition because Plaintiff admitted during his deposition that he did not have any information to prove that Kroger was aware of the puddle of water prior to the incident, and Ms. Audirsch stated in her affidavit that, *to her knowledge*, no Kroger employees were aware of it. We respectfully disagree with Kroger's assertion that this evidence established that Plaintiff cannot prove an essential element of his claim at trial. It is not enough for the moving party to demonstrate that the nonmoving party's evidence, *at the summary judgment stage*, is *insufficient* to establish an essential element of his claim. ***Hannan***, 270 S.W.3d at 7. Instead, the moving party shifts the burden of production by showing that the nonmoving party *cannot establish* an essential element of the claim *at trial*. ***Id.*** Plaintiff's admission that he has not discovered any evidence to prove actual knowledge of the condition *thus far* does not mean that he will not discover such evidence prior to trial. *See, e.g.*, ***White v. Target Corp.***, No. W2010-02372-COA-R3-CV, 2012 WL 6599814 , at *7 (Tenn. Ct. App. Dec. 18, 2012) (explaining that, under *Hannan*, a moving party must negate an essential element or show that the nonmovant cannot establish an element of the claim, and it is not enough to say that the nonmovant has not yet proffered evidence to substantiate her assertions). Furthermore, Ms. Audirsch's statement that, "To [her] knowledge, no Kroger employees were aware of any substance being present on the floor," does not rule out the possibility that

an employee was aware of it. During her deposition, Ms. Audirsch was asked, "Did you interview every employee on duty that day as to whether they knew if there was anything on the floor?" to which she responded, "No, sir."

At this stage of the proceedings, "it is not the role of a trial or appellate court to weigh the evidence or substitute its judgment for that of the trier of fact." **Martin**, 271 S.W.3d at 87 (citing *Byrd*, 847 S.W.2d at 211). At most, Kroger submitted evidence that cast doubt on Plaintiff's ability to prove his claim at trial. Because the summary judgment motion failed to establish that Plaintiff cannot prove actual notice at trial, the trial court improvidently granted summary judgment on this issue.

### B.    Constructive Notice

Next, we will consider the issue of constructive notice. "A plaintiff may prove constructive notice by showing that 'the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition.'" **Piana**, 316 S.W.3d at 631 (quoting *Blair*, 130 S.W.3d at 764). "Alternatively, the plaintiff may prove constructive notice by showing 'a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence.'" **Id.** (quoting *Blair*, 130 S.W.3d at 765-66). Kroger argued that Plaintiff could not prove constructive notice because of his admitted lack of knowledge regarding how long the puddle had been present, and because Ms. Audirsch testified that the area was clean and dry when she inspected it five minutes earlier. Ms. Audirsch claimed that the puddle that was found after Plaintiff fell was small, about the size of a pie plate, that she simply wiped it up with paper towels, and that there was no indication that it came from the nearby coffin cooler. In response to the motion for summary judgment, Plaintiff pointed to various inconsistencies between Ms. Audirsch's testimony and other evidence. He submitted the photographs clearly showing a mop near Plaintiff's head after he fell, and he testified that he remembered someone mopping around him. He claimed that the photographs also showed a significant amount of water. Plaintiff and his fiancée both testified that the puddle of water was so large that it reached from his head to below his waistline, and that it was enough to soak his hair and clothing. Plaintiff suggested that the size of the puddle that had accumulated was so large that it was likely present for more than five minutes, and therefore, Ms. Audirsch could not have inspected the area five minutes earlier, as she claimed. In any event, Plaintiff also pointed out in his response that a plaintiff is relieved of the duty or burden of establishing the duration of the dangerous condition if the plaintiff can show that the dangerous condition was a pattern of conduct, a recurring incident or a general or continuing condition such that its presence was foreseeable to the premises owner.

To counter these arguments, Kroger asserted that Plaintiff could not respond to its motion for summary judgment simply by alleging that Ms. Audirsch was lying. Kroger claims that Ms. Audirsch's testimony that she inspected the area five minutes earlier remains uncontradicted. We agree that a simple allegation of untruthfulness would be an insufficient method of responding to a motion for summary judgment. Our Supreme Court has explained that a party opposing a motion for summary judgment "may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856, 862-63 (Tenn. 1985). Instead, "the party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion[.]" *Id.* "'The opponent to the motion for summary judgment must raise a *genuine doubt* as to witness credibility.'" *Hill Boren, P.C. v. Paty, Rymer & Ulin, P.C.*, No. W2012-00925-COA-R3-CV, 2013 WL 1136540, at *15 (Tenn. Ct. App. Mar. 19, 2013) (quoting *Bailey Tool & Mfg. Co. v. Butler*, No. M2009-00685-COA-R3-CV, 2010 WL 2073854, at *7 (Tenn. Ct. App. May 21, 2010)). Raising a genuine doubt as to the credibility of material witnesses will create a genuine issue of material fact sufficient to render granting summary judgment improper, especially "when the basic facts are under the control of one of the parties." *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 942-43 (Tenn. Ct. App. 1984). "[W]hen the credibility of the evidence has been called into question using one of the legal modes available to test the credibility of witnesses," uncontradicted evidence will not entitle a party to summary judgment. *Id.*

Here, Plaintiff presented evidence contradicting Ms. Audirsch's testimony about the circumstances surrounding the slip and fall in several respects. Her testimony about the size of the puddle is directly at odds with the testimony of Plaintiff and his fiancée. Ms. Audirsch testified that "all [she] had to use to wipe it up [was] a paper towel," when Plaintiff testified that a Kroger employee mopped up the puddle, and the photographs of the scene clearly show a mop beside Plaintiff's head. Ms. Audirsch's testimony about Plaintiff's clothing being "completely dry" is likewise disputed. Ms. Audirsch testified that she did not remember the cooler at issue ever requiring the use of an absorbent sock, yet Plaintiff submitted photographs of the cooler that were taken within a week of the incident that showed that an absorbent sock had been placed beside the cooler at the exact area where Plaintiff fell.[6] Obviously, many of the basic facts at issue are under Kroger's control, and Ms. Audirsch,

---

[6] Kroger objected to the use of this evidence in order to prove negligence, pursuant to Tennessee Rule of Evidence 407. Plaintiff pointed out that the Rule, by its terms, "does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving controverted ownership, control, or feasibility of precautionary measures, or impeachment." He claimed that the photographs were admissible to impeach Ms. Audirsch's credibility, as she had testified that the cooler had never required the use of an absorbent sock. We agree.

being a current Kroger employee, has some interest in the case. Considering all of the evidence submitted by Plaintiff in response to the motion for summary judgment, we find that Plaintiff raised a genuine doubt as to Ms. Audirsch's credibility, and thereby created a genuine issue of material fact regarding the length of time that the condition existed, which precluded the entry of summary judgment on the issue of constructive notice. The possibility also remains that Plaintiff could prove constructive notice by showing "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." *Piana*, 316 S.W.3d at 631. For these reasons, summary judgment was inappropriate on the issue of constructive notice.

### C.    Creation of the Condition

Finally, we turn to Plaintiff's allegation that Kroger "caused or created" the dangerous condition. Kroger argued that Plaintiff could not prove that it caused or created the dangerous condition because Plaintiff admitted during his deposition that he did not know the source of the water, and Ms. Audirsch testified that she inspected the freezer after the fall and found no evidence of a leak. As noted above, Ms. Audirsch also testified that, despite her inspection of the freezer, she called Kroger's Facility maintenance department "to request them to come out and fix that freezer" in order "to make sure that everything was okay," and she could not recall if the Facility department ever came out or if the freezer had to be repaired. We find that a genuine issue of material fact remains as to whether Kroger caused or created the condition, due to the aforementioned credibility concerns surrounding Ms. Audirsch's testimony, her acknowledgment that she called the maintenance department to "fix" the freezer despite her claimed inspection of it, and her testimony that she could not recall whether the maintenance department actually performed repairs on the freezer thereafter.

"'A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion.'" *Shipley v. Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009)). We cannot say that is the case here. Viewing the evidence in the light most favorable to the nonmoving party, and drawing all reasonable inferences in Plaintiff's favor, as we are required to do at the summary judgment stage, we believe that a reasonable person could conclude that Kroger either caused or created the dangerous condition, or knew or should have known about it. Therefore, summary judgment was inappropriate.

-11-

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court and remand for further proceedings. Costs of this appeal are taxed to the appellee, The Kroger Company, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.