IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2015 Session

## GARY LEE STEELE, ET AL. v. PRIMEHEALTH MEDICAL CENTER, P.C., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005137-12     Rhynette N. Hurd, Judge**

---

**No. W2015-00056-COA-R3-CV – Filed December 22, 2015**

---

This is a premises liability case.  A delivery person fell on a sidewalk outside the place of business where he was delivering an order.  He and his wife sued the business and its owner for negligence, claiming that the condition of the sidewalk was unreasonably dangerous.  The trial court granted summary judgment to the defendants, concluding that the plaintiffs presented insufficient evidence to demonstrate that the sidewalk was unreasonably dangerous.  For the following reasons, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Mark Anthony Lambert, Memphis, Tennessee, for the appellants, Gary Lee Steele and Judy Steele.

Russell B. Jordan, Dawn Davis Carson, and Hal Scot Spragins, Jr., Memphis, Tennessee, for the appellees, PrimeHealth Medical Center, P.C., and Olugbenga Fayele.[1]

**OPINION**

### I. FACTS & PROCEDURAL HISTORY

Gary Steele was employed as a delivery person for an office supply store. On

---

[1]Dr. Fayele's name was spelled differently throughout the record.  We have used the spelling as stated by Dr. Fayele during his deposition.

January 19, 2012, Steele fell when making a delivery to a building owned by Dr. Olubenga Fayele and occupied by Primehealth Medical Center, PC ("Primehealth").

On December 5, 2012, Steele and his wife (collectively, "Plaintiffs") filed this lawsuit against Dr. Fayele and Primehealth (collectively, "Defendants"). According to the complaint, Steele was walking along the sidewalk at Primehealth to deliver office supplies "when he stepped off of an unmarked dropoff in the sidewalk." The complaint alleged that Steele suffered great bodily harm as a result of the fall. Plaintiffs alleged that Defendants were negligent in creating the hazardous condition of the sidewalk and in failing to either make the condition safe or warn others of the dangerous condition by appropriate warning signs. Finally, Plaintiffs alleged that Defendants were negligent in failing to train their employees to monitor the area to ensure the safety of its patrons and/or guests. The complaint sought compensatory damages for Steele's injuries and for loss of consortium.

Defendants filed an answer denying the existence of a dangerous condition. Discovery ensued pursuant to a scheduling order entered by the trial court.

On October 17, 2014, Defendants filed a motion for summary judgment. Among other things, they asserted that they did not breach any duty to Steele, that the condition complained of did not constitute a dangerous, hazardous, or defective condition, and that it was not foreseeable that Steele would be injured. Defendants submitted expert testimony from Paul D. Colman, a professional engineer, who was employed by a consulting group that was retained to evaluate the location of the fall for compliance with applicable codes.

Colman's report described the physical characteristics of the location. The sidewalk at issue ran alongside the building and measured five and a half feet wide. The fall occurred near the front entrance of the building at a "curb-cut" in the sidewalk for a wheelchair ramp. On the side nearest the building entrance, the sidewalk ramp sloped at an incline, and the bottom end of the ramp terminated at a concrete landing that was at the same elevation as the adjacent driveway. This lower landing was approximately four and a half feet long and five and a half feet wide. On the other side of the landing, the sidewalk did not slope to form a ramp. Instead, it formed what Colman described as "a single step riser approximately 5 inches high." Colman reported that the ramp, the lower landing, and the curb cut on the other side were lighter in color than the concrete sidewalk.

According to the report, Dr. Fayele informed Colman that the building was constructed in 2000 and that he purchased it as a shell structure. In 2001, the building was "built-out" by a general contractor for use as a medical office, at which time the

ramp in the sidewalk was constructed at the front of the building to provide wheelchair access. Dr. Fayele reported that during the build-out, the building was inspected and approved by code officials from the City of Bartlett.

Colman based his report on his on-site inspection, photographs and measurements of the location, his interview with Dr. Fayele, his contact with the Bartlett Code Enforcement Department, his review of the building codes and inspection tags, photographs provided by Plaintiffs, and a statement provided by Steele. Colman cited the following sections from the 1994 *Standard Building Code*:

Section 1007.3.1 — Risers shall not exceed 7 ¾ inches in height.
Section 1015.1 — Guards shall be provided at locations that are more than 30 inches above the floor or grade below.

Applying these sections, Colman opined:

. . . . The height of the step was approximately 5 inches which was less than the maximum riser height required by the SBC. In addition, the code allows for unprotected, open-sided walking surfaces that are 30 inches or less above the floor or a grade below. There were no requirements in the building code to mark or stripe sidewalks and curbs.

The curb-cut in the sidewalk was similar in detail to figures shown in the 1999 North Carolina Accessibility Code which Mr. Williams, a code official with the City of Bartlett, reported they were referencing at the time the facility was being completed. Furthermore, two tags from the City of Bartlett Inspection Department dated December 5, 2001 and December 11, 2001 indicated approval of the building work.

In sum, Colman concluded that the curb cut "did not violate the provisions of the 1994 *Standard Building Code* or the 1992 CABO/ANSI 117.1 *Accessible and Usable Buildings and Facilities* guidelines that were enforced at the time the building was constructed and built-out."

Defendants also submitted, in support of their motion for summary judgment, the depositions of Steele and Dr. Fayele. Steele described the circumstances surrounding his fall on January 19, 2012. He said he was pulling his two-wheel dolly, which was loaded with two packages weighing about sixty pounds, down the sidewalk. He clarified that he was pulling the dolly but looking straight ahead toward the entrance as he walked. He could not remember whether he was holding his scanner in his hand or if it was in his pocket. Steele had never delivered to this particular building before and was unaware of

the five-inch step at the side of the wheelchair ramp. Steele said he was looking in the direction he was walking in order to make sure everything was clear. However, he testified that he did not see the step as he approached it and "all of a sudden it dropped." Steele testified that he fell on both knees and broke one of his legs. Steele explained, "If you look at the picture way back here you would see what I would see because you do not see that way back there. When you're coming up into it, it's too late." He also said,

> I disagree with the way it's made. There's no coloring there. There's no yellow mark. If I had seen a yellow mark I would have stopped. If I had seen something here I would have stopped. If I would have seen a sign, handicap, I would have stopped. That's the thing that was messing me up. Why didn't they mark it? A little bit of paint would have made a difference and solved all the problems. We wouldn't have had to go through this.

Steele testified that a warning sign or colored marking "would have told me to stop because that's what I do when I see places like that. It helps me a whole lot better to stay alert because when I didn't see that, I looked straight ahead and I didn't see no cutoff." During his 2013 deposition, Dr. Fayele testified that no other incidents had occurred at the wheelchair ramp since its construction in late 2001 or early 2002.

Defendants argued, based on their expert report and these depositions, that Plaintiffs had no evidence to establish that the wheelchair ramp was dangerous or defective in any way or that it was reasonably foreseeable that the plaintiff would fall or be injured at that location. In addition, Defendants claimed that it was impossible to infer that a dangerous or defective condition existed on the premises that would give rise to a duty to remove or repair the condition or warn Steele of its existence. Thus, Defendants argued that summary judgment was appropriate because they negated an essential element of Plaintiffs' negligence claim and also demonstrated that Plaintiffs lacked sufficient evidence to establish their claim.

In response, Plaintiffs filed a motion to amend the trial court's scheduling order and a response to the motion for summary judgment, supported by a report from their own expert witness. Plaintiffs argued that their expert report "and other material factual disputes" rendered summary judgment inappropriate. Plaintiffs' expert witness was eventually excluded by the trial court due to Plaintiffs' failure to identify the expert during discovery and in accordance with the scheduling order, and that ruling is not challenged on appeal. As a result, we will limit our discussion to the "other material factual disputes" referenced by Plaintiffs in their response to the motion for summary judgment.

Plaintiffs cited Steele's own deposition testimony about the nature of the five-inch

4

step and the circumstances surrounding his fall. He also referenced the photographs that were attached to Colman's report and asserted that they depicted a dangerous condition. Based on this evidence, Plaintiffs argued that a jury could easily find that Defendants created a dangerous condition that proximately caused Steele's injuries. Plaintiffs insisted that even if the building passed inspection when constructed, and the design of the wheelchair ramp complied with applicable codes, these facts did not conclusively establish that the ramp was not dangerous. However, in any event, Plaintiffs also disagreed with Colman's opinion as to the ramp's compliance with building codes.

After a hearing, the trial court entered an order granting Defendants' motion for summary judgment. The court excluded Plaintiffs' expert because he was not designated in accordance with the scheduling order. The trial court concluded that "[t]he evidence presented by the plaintiff[s] is insufficient to prove that a dangerous condition existed on the premises or that the defendants otherwise breached a duty owed to the plaintiffs[.]" The court held that "without the testimony of an expert that the curb-cut on the sidewalk ramp constituted a dangerous condition that there could be no issues of material fact." Plaintiffs timely filed a notice of appeal.[2]

## II. ISSUES PRESENTED

Plaintiffs present the following issues for review on appeal:

1. Whether the trial court erred in holding as a matter of law that Plaintiffs must have expert testimony in order to establish that the sidewalk was unreasonably dangerous;

2. Whether the trial court erred in holding as a matter of law that building code compliance foreclosed any further factual dispute regarding the existence of a dangerous sidewalk; and

3. Whether the trial court erred in judicially resolving a factual dispute over whether the sidewalk actually complied with building codes.

For the following reasons, we affirm and remand for further proceedings.

---

[2]The original order entered by the trial court did not comply with the requirements of Rule 58 of the Tennessee Rules of Civil Procedure. Consequently, the order was not effective as a final order or judgment. This Court entered a show cause order on May 20, 2015, directing the appellant to obtain the entry of a final order. An amended final order was entered on June 12, 2015, and transmitted to this Court.

## III. STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary judgment de novo without a presumption of correctness. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, No. W2013-00804-SC-R11-CV, --- S.W.3d ---, 2015 WL 6457768, at *22 (Tenn. Oct. 26, 2015). When a motion for summary judgment is properly supported as provided in Tennessee Rule of Civil Procedure 56, in order to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading, but must respond, and by affidavits or one of the other means provided in Rule 56 set forth specific facts at the summary judgment stage showing that there is a genuine issue for trial. *Id.* Summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial. *Id.* (citing Tenn. R. Civ. P. 56.04, 56.06).

As a general rule, negligence cases are not amenable to disposition on summary judgment; however, summary judgment "may be used to conclude any civil case, including negligence cases, that can be and should be resolved on legal issues alone." *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997). Summary judgment is appropriate in a negligence case if the facts together with the inferences to be drawn from the facts are so certain and uncontroverted that reasonable minds must agree. *Keene v. Cracker Barrel Old Country Store, Inc.,* 853 S.W.2d 501, 502-03 (Tenn. Ct. App. 1992). "Courts need not submit to the jury negligence cases containing only a spark or glimmer of evidence that requires the finder-of-fact to make a leap of faith to find the defendant liable for the plaintiff's injury." *Psillas v. Home Depot, U.S.A., Inc.,* 66 S.W.3d 860, 866 (Tenn. Ct. App. 2001) (citing *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995); *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 427 (Tenn. Ct. App. 1994)).

## IV. DISCUSSION

Negligence cannot be presumed by the mere happening of an injury or accident. *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971). Simply put, "[p]eople fall all the time but this does not perforce mean that the fall was due to another's negligence[.]" *Anderson v. Wal-Mart Stores East, L.P.*, No. 2:12-00037, 2013 WL

3010696, at *3 (M.D. Tenn. June 18, 2013). A plaintiff must establish the following elements to prove a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care, amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).

Owners and occupiers of business premises are required to exercise due care under all the circumstances, but they are not insurers of the safety of their customers or the general public. *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014); *Plunk v. Nat'l Health Inv'rs, Inc.*, 92 S.W.3d 409, 413 (Tenn. Ct. App. 2002). Property owners are responsible for "either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." *Parker*, 446 S.W.3d at 350 (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)). The operator of a place of business has a duty to maintain the premises "'in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired.'" *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 629-30 (Tenn. Ct. App. 2009) (quoting *Psillas*, 66 S.W.3d at 864). However, the property owner is not responsible for removing or warning against "conditions from which no unreasonable risk was to be anticipated." *Parker*, 446 S.W.3d at 350. Liability is imposed when the condition constituted a danger from which injury might be reasonably anticipated. *Newcomb v. State*, No. M2014-00804-COA-R3-CV, 2015 WL 3956038, at *3 (Tenn. Ct. App. June 26, 2015) (*no perm. app. filed*).

The issue in this case is whether a dangerous or defective condition existed on Defendants' premises such that they had a duty to remove or repair the condition or warn Steele of its existence. *See Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *5 (Tenn. Ct. App. Feb. 12, 2008). "The determination of whether a particular location is defective, dangerous or unsafe is a question of fact." *Christian v. Ebenezer Homes of Tenn. Inc.*, No. M2012-01986-COA-R3-CV, 2013 WL 3808210, at *3 (Tenn. Ct. App. July 17, 2013), *perm app. denied* (Tenn. Dec. 26, 2013) (citing *Helton v. Knox County*, 922 S.W.2d 877, 882 (Tenn. 1996)).

At the outset, we consider Plaintiffs' issue regarding the necessity of testimony from an expert witness. Plaintiffs argue that the trial court erred in holding as a matter of law that Plaintiffs must have expert testimony in order to establish that the sidewalk was unreasonably dangerous. As previously discussed, the trial court excluded Plaintiffs' expert witness because he was not disclosed during discovery or in accordance with the trial court's scheduling order. According to the trial court's order granting summary judgment, "[t]he Court further held that without the testimony of an expert that the curb-

cut on the sidewalk ramp constituted a dangerous condition that there could be no issues of material fact." To the extent the trial court held that expert testimony was mandatory, the trial court erred in its holding.

"'There is a seemingly endless list of areas in which expert testimony has been admitted. This list will continue to grow as the complexity of our civilization increases, as knowledge burgeons, and as specialization grows.'" *Song & Song Corp. v. Fine Art Constr. Co., LLC*, No. W2011-01708-COA-R3-CV, 2012 WL 2146313, at *11 (Tenn. Ct. App. June 14, 2012) (*no perm. app. filed*) (quoting Robert E. Burch, *Trial Handbook for Tenn. Lawyers* 24:17 (2012 ed.)). However, we are not aware of any general requirement, established by a court or by the legislature, that expert testimony must be presented in order to prove the existence of a dangerous condition in a premises liability case. As a general rule, no expert testimony is required when a case involves ordinary negligence. *See, e.g.*, *Wilson v. Monroe Cty.*, 411 S.W.3d 431, 440-41 (Tenn. Ct. App. 2013).

> The mere availability of expert proof does not give rise to a corresponding obligation that it be used. Rather, expert testimony is necessary only when the subject of examination requires knowledge or experience that persons lacking special skills do not have and that cannot be obtained from ordinary witnesses. If the finder of fact can comprehend the subject of expertise without expert testimony, then an expert witness is not necessary.

*Miller v. Willbanks*, 8 S.W.3d 607, 615 (Tenn. 1999). In *Miller*, for instance, the supreme court held that a lay juror is generally competent to decide whether a party has sustained a serious mental injury in cases of intentional infliction of emotional distress, thus obviating the necessity of expert proof. *Id.* at 616. In another case, the supreme court held that expert testimony was not necessary to determine whether a construction contractor and the public utility that hired the contractor were negligent in leaving a ditch open over a weekend of heavy rain when the contractor intended to backfill the trench as soon as the electric utility company installed conduit. *Lawrence County Bank v. Riddle*, 621 S.W.2d 735, 737 (Tenn. 1981). In another case, the court affirmed a trial court's decision to credit lay testimony regarding the condition of roads rather than expert testimony presented by a contractor, concluding that the subject of road conditions was "within the ken of ordinary laymen." *Cocke County Bd. of Highway Commrs. v. Newport Util. Bd.*, 690 S.W.2d 231, 235 (Tenn. 1985). The court of appeals has held that a layman can determine whether a contractor was negligent in leaving the metal end of a guardrail exposed to approaching traffic; expert testimony of the standard of care of a road contractor was not necessary. *Usher v. Charles Blalock & Sons, Inc*., 339 S.W.3d 45, 61-63 (Tenn. Ct. App. 2010). We have also held that "no expert testimony is required to prove a dangerous condition under the GTLA when some competent evidence of a

hazard exists." *Huskey v. Rhea Cty.*, No. E2012-02411-COA-R3-CV, 2013 WL 4807038, at *5 (Tenn. Ct. App. Sept. 10, 2013), *perm. app. denied* (Tenn. Jan. 14, 2014).[3]

Applying these principles to the case before us, we conclude that expert testimony was not a prerequisite to establishing that the sidewalk or wheelchair ramp was unreasonably dangerous. A finder of fact could comprehend the subject matter without expert testimony. The trial court's ruling to the contrary was erroneous. However, this conclusion does not necessarily require reversal under the circumstances of this case. "It is well settled that this Court will affirm the trial court's grant of summary judgment if it finds that the trial court reached the correct result, 'irrespective of the reasons stated.'" *Shoemake v. Omniquip Int'l, Inc.*, 152 S.W.3d 567, 577 (Tenn. Ct. App. 2003) (quoting *Clark v. Metro. Gov't of Nashville & Davidson Cty.*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991)). In addition to its holding regarding the need for expert testimony, the trial court also found that Defendants "sufficiently demonstrated that there is insufficient evidence to establish that a dangerous condition existed on the property on the date of the incident." Defendants argue that "Plaintiffs failed to prove the sidewalk was unreasonably dangerous with any evidence, expert or not." Therefore, we will proceed to consider whether the lay evidence presented by Plaintiffs was sufficient to withstand Defendants' motion for summary judgment.[4]

At this juncture, it is helpful to review some previous holdings by this Court in premises liability cases involving summary judgment. In *Boykin v. George P. Morehead Living Trust*, No. M2014-00575-COA-R3-CV, 2015 WL 3455433, at *1 (Tenn. Ct. App. May 29, 2015) (*no perm. app. filed*), the plaintiff tripped and fell on a concrete landing in a parking lot, where the parking lot was four inches lower than the concrete landing. The plaintiff stated that he did not notice the difference in height prior to the fall because he was looking straight ahead, rather than down at where he was walking. No other accidents, incidents, or complaints regarding the concrete landing had been reported to the owner. The plaintiff sued the parking lot owner for negligence, alleging that the owner failed to correct the dangerous condition of the concrete landing, *i.e.*, the four-inch

---

[3]"The GTLA 'codifies the common law obligations of owners and occupiers of property embodied in premises liability law.'" *Huskey*, 2013 WL 4807038, at *4 (quoting *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002)).

[4]In their second issue on appeal, Plaintiffs assert that the trial court erred in holding as a matter of law that building code compliance foreclosed any further factual dispute regarding the existence of a dangerous condition. Having reviewed the transcript and the trial court's written order, we discern nothing to suggest that the trial court made such a ruling. In fact, the trial judge asked defense counsel during the hearing, "Well, it could meet the building code and still be a dangerous condition, is that right? Would you agree with that?" Defense counsel responded, "I wouldn't disagree with that, Your Honor, but there's no indication that it's a dangerous condition." The trial court's order states nothing to the contrary.

height difference. The trial court granted summary judgment to the defendant, concluding, among other things, that the plaintiff failed to establish that a dangerous or defective condition existed and, therefore, the owner had no duty to warn the plaintiff or to correct the condition. *Id.* at *2. On appeal, this Court affirmed. We concluded that the plaintiff "did not present sufficient evidence to demonstrate that the height deferential between the concrete parking landing and the parking lot was a dangerous or defective condition." *Id.* at *3. We acknowledged that the plaintiff presented photos, his own testimony, and a contractor's statement that the parking lot surface was not flush with the concrete landing. However, we deemed this evidence insufficient. The contractor's statement that the asphalt was not even with the concrete slab failed to establish that a dangerous or defective condition existed. The photos showed only the parking lot and the landing as they existed at the time of the injury. We explained, "[f]or a jury to conclude that the height differential was dangerous or defective would require 'speculation, conjecture, and guesswork.'" *Id.* (quoting *Nee v. Big Creek Partners*, 106 S.W.3d 650, 654 (Tenn. Ct. App. 2002)). We also concluded that the plaintiff's testimony did not permit a reasonable inference that the height differential was defective or dangerous, as he admitted that if he had looked down where he was walking, he would have seen the height difference and avoided the fall. Therefore, we affirmed the grant of summary judgment to the defendant.

In *Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *1 (Tenn. Ct. App. Feb. 12, 2008), the plaintiff was injured in a hospital parking lot when she stepped down off a curb that separated a dirt embankment from the driveway. The curb on which she fell was approximately three inches high, unmarked, unpainted, and the same color as the concrete driveway as well as the adjacent ground. She sued the hospital for negligence, alleging that the curb constituted an unsafe, dangerous, and defective condition. The defendants filed a motion for summary judgment, supported by the testimony of an architect, who stated that the curb from which the plaintiff fell was not designed, constructed, or placed in an unsafe, defective or dangerous manner. The curb was of standard height, color, and construction, and neither the curb nor its placement violated any building codes or standards. According to the architect, building codes did not require that the curb be painted, and that type of curb was common in parking lots throughout the Nashville area. Still, the plaintiff argued that a jury could conclude that the unpainted curb was dangerous. *Id.* at *2. The court of appeals affirmed the trial court's grant of summary judgment to the property owner. The court explained, "A trier of fact cannot conclude that an owner failed to exercise reasonable care to prevent injury to persons on their property if there is no evidence of a dangerous or defective condition." *Id.* at *4 (citing *Nee*, 106 S.W.2d at 654). Although it was undisputed that the curb was unpainted and that the plaintiff did not notice it, the court concluded that the plaintiff simply failed to set forth specific facts to indicate that the hospital breached a duty to the plaintiff.

10

In *Cagle v. Gaylord Entertainment Co.*, No. M2002-00230-COA-R3-CV, 2002 WL 31728866, at *1 (Tenn. Ct. App. Dec. 5, 2002), *perm. app. denied* (Tenn. June 30, 2003), the plaintiff fell in a hotel parking lot when she allegedly tripped on a long white concrete curb or barrier separating opposing parking spaces. This Court affirmed the trial court's grant of summary judgment to the hotel, finding no proof of a dangerous condition. *Id.* at *4. The curb had no obvious physical or construction defects. *Id.* at *2. The record contained no expert testimony that the curb or parking lot was designed or constructed in an unsafe, perilous or dangerous manner; it contained no evidence of other tripping accidents on any curb in the parking lot; and it contained no evidence that any building code or standard was violated in the construction or maintenance of the parking lot. We explained, "[i]t is conceivable that proof could be developed that would lead to the conclusion that the design and construction of the curb and the lighting in the parking lot created an unsafe, dangerous, or perilous condition. However, this record contains no such proof." *Id.* at *3. The court noted, "[t]he fact that Ms. Cagle tripped on the curb is not proof that the curb is dangerous or unsafe. Graceful athletes often trip on yardlines in football or on the foul line in basketball. People do trip and fall on conditions that are not unsafe." *Id.* Without some evidence in the record that the curb was defective or dangerous, summary judgment was appropriate.

We have reached similar results in several other cases. *See, e.g.*, *Grady v. Summit Food Corp.*, No. M2012-02493-COA-R3-CV, 2013 WL 4107285, at *6 (Tenn. Ct. App. Aug. 13, 2013) (*no perm. app. filed*) (affirming summary judgment to a defendant restaurant, finding the entrance ramp did not constitute a dangerous condition where there were no other reports of injuries at the walkway, it did not violate any applicable building codes, and it was cleaned regularly); *Christian v. Ebenezer Homes of Tenn., Inc.*, No. M2012-01986-COA-R3-CV, 2013 WL 3808210, at *5 (Tenn. Ct. App. July 17, 2013), *perm. app. denied* (Tenn. Dec. 26, 2013) (affirming summary judgment on a claim that windowless double doors were a dangerous condition, where the defendant showed that the doors were properly installed and functioning, they complied with applicable codes and were periodically inspected, and there were no other reports of incidents or injuries regarding the doors); *Gordon v. By-Lo Markets, Inc.*, No. E2009-02436-COA-R3-CV, 2010 WL 3895541, at *3 (Tenn. Ct. App. Oct. 5, 2010), *perm. app. denied* (Tenn. Mar. 9, 2011) (affirming summary judgment to a grocery store where the plaintiff relied on a photograph of the stained parking lot and her testimony that a slick spot caused her fall but failed to offer any evidence demonstrating that the stained parking lot constituted a dangerous condition); *Barron v. Stephenson*, No. W2004-02906-COA-R3-CV, 2006 WL 16310, at *4-5 (Tenn. Ct. App. Jan. 4, 2006) (affirming summary judgment in a case alleging that a handicap ramp constituted a dangerous condition, where the plaintiff alleged the ramp was slippery but admitted the owner was not required by law to cover the ramp's wooden surface, there was nothing obstructing her view of the ramp, and there were no foreign objects on the ramp); *Nee*, 106 S.W.3d at 654 (affirming a directed

verdict for the defendant, explaining that a jury could not be permitted to infer that steps were dangerous from merely examining photos).

Again, in the case before us, Defendants asserted in their motion for summary judgment that Plaintiffs had insufficient evidence to demonstrate that the sidewalk or wheelchair ramp constituted a dangerous or defective condition. They submitted evidence to establish that the build-out of the building was inspected and approved by code officials from the City of Bartlett. They submitted Plaintiff Steele's deposition testimony, in which he stated that "[a] little bit of paint would have made a difference and solved all the problems," along with the report from Colman, who stated that there were no requirements in the building code to mark or stripe sidewalks and curbs. Colman also stated that the curb-cut in the sidewalk was similar in detail to figures shown in the 1999 North Carolina Accessibility Code, which a code official with the City of Bartlett reported the City referenced at the time the facility was completed. Colman concluded that the curb cut "did not violate the provisions of the 1994 Standard Building Code or the 1992 CABO/ANSI 117.1 Accessible and Usable Buildings and Facilities guidelines that were enforced at the time the building was constructed and built-out." Defendants also submitted the deposition of Dr. Fayele, who testified that no other incidents had occurred at the wheelchair ramp in the eleven years since it was constructed in late 2001 or early 2002.

We conclude that Defendants satisfied their burden of production by demonstrating that Plaintiffs' evidence at the summary judgment stage was insufficient to establish their claim for negligence. *See, e.g.*, *Bildner v. Gaylord Entertainment Co.*, No. M2006-00840-COA-R3-CV, 2007 WL 1062166, at *4 (Tenn. Ct. App. Jan. 11, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007) (explaining that evidence demonstrating that an allegedly dangerous porch surface conformed with local building standards and met or exceeded standards necessary for commercial surfaces led to the conclusion that "no unreasonable risk was to be anticipated" from the porch surface); *Christian*, 2013 WL 3808210, at *4 (finding evidence that the allegedly dangerous doors were inspected according to safety regulations and that no other person had been injured by the doors supported the finding that the doors did not constitute a dangerous condition, thereby negating an essential element of the plaintiff's claim).

When faced with a properly made and supported motion for summary judgment, the nonmoving party may not rest on its pleadings "but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Rye*, --- S.W.3d ---, 2015 WL 6457768, at *22 (quoting Tenn. R. Civ. P. 56.06). The nonmoving party must do more than simply demonstrate some metaphysical doubt as to the material facts; the nonmoving party must demonstrate the existence of specific facts in the record

which could lead a rational trier of fact to find in favor of the nonmoving party. *Id.* "[S]ummary judgment may be granted when the evidence supporting the plaintiff's claim 'is merely colorable or is not significantly probative.'" *Id.* at \*13 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]

*Id.* (quoting *Anderson*, 477 U.S. at 252).

In response to Defendants' summary judgment motion, Plaintiffs submitted testimony from an expert witness, but that testimony was excluded and is not at issue on appeal. Aside from that expert testimony, Plaintiffs did not introduce any new evidence. Their response to the motion for summary judgment, which appears in the record before us, does not include any attachments. Instead, Plaintiffs pointed to the photographs that were already in the record, attached to Colman's report, and they quoted testimony from Steele's deposition. Specifically, they cited Steele's deposition testimony that the sidewalk "was straight and then all of a sudden it dropped." They cited his testimony that he believed the location should have been marked with paint, a sign, or some type of warning. They claimed that jurors could examine the photographs and determine that they depicted a dangerous condition.

We disagree. The paucity of evidence in this case would require a fact finder to speculate in order to find that the condition of the sidewalk and wheelchair ramp was dangerous or defective.[5] Again, a property owner is not responsible for removing or

---

[5]In their third issue on appeal, Plaintiffs argue that the trial court erred in judicially resolving a factual dispute over whether the sidewalk actually complied with the building codes. We disagree. Defendants submitted affirmative evidence that the building codes were not violated, and Plaintiffs' response failed to create a genuine issue of material fact regarding building code compliance. In their response, Plaintiffs did discuss some provisions of building codes that were apparently attached as an appendix to the report of their excluded expert. However, the building codes apparently were not filed with the trial court apart from the expert report itself. As a result, the text of the building codes does not appear in the record before us, and they were apparently not considered by the trial court. Although Plaintiffs' brief on appeal references Internet websites where the codes can allegedly be found, we cannot simply take notice of such materials. We decline to consider Plaintiffs' arguments based on building codes that were not considered by the trial court and do not appear in the record. The appellant has a duty to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues that form the basis of his or her appeal. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). "Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue." *State v. Ballard*, 855 S.W.2d 557, 561 (Tenn. 1993).

warning against "conditions from which no unreasonable risk was to be anticipated." *Parker*, 446 S.W.3d at 350. "The duty applicable to premises owners only requires them to remove or warn against conditions that are, in fact, dangerous." *Newcomb*, 2015 WL 3956038, at \*3 (citing *Parker*, 446 S.W.3d at 350). A premises owner is not under a duty to warn of every aspect of a premises that may be unfamiliar. *Norfleet v. Pulte Homes Tenn. Ltd. P'ship*, No. M2011-01362-COA-R3-CV, 2011 WL 5446068, at \*5 (Tenn. Ct. App. Nov. 9, 2011). "'To hold otherwise would necessarily cast the premises owner in the role of an absolute insurer of the social guest's safety, which is not contemplated by our negligence law.'" *Id.* (quoting *Eaton v. McLain*, 891 S.W.2d 587, 595 (Tenn. 1994)). Consequently, in order to hold a premises owner liable for an injury, there must be some evidence that a dangerous condition actually existed on the premises. *Nee*, 106 S.W.3d at 653. "A condition is dangerous 'only if it is reasonably foreseeable that the condition could *probably* cause harm or injury and that a reasonably prudent property owner would not maintain the premises in such a state.'" *Newcomb*, 2015 WL 3956038, at \*4 (quoting *Stewart*, 2008 WL 426458, at \*4). "The fact that an injury is simply possible, as opposed to probable, does not make a condition dangerous." *Newcomb* at \*4; *see also Christian*, 2013 WL 3808210, at \*3 ("probability, not possibility, governs; that it is possible does not make it dangerous").

We find ourselves in the same position as the court of appeals in *Cagle*: "It is conceivable that proof could be developed that would lead to the conclusion that the design and construction of the curb . . . created an unsafe, dangerous, or perilous condition. However, this record contains no such proof." *Cagle*, 2002 WL 31728866, at \*3. Given Defendants' evidence that the curb complied with building codes and that no other incidents had occurred at the curb in the eleven years since its construction, Plaintiffs failed to create a genuine issue of material fact by simply pointing to the photographs of the location and the testimony of Steele. While the facts demonstrate that an unfortunate accident occurred, they do not demonstrate that a dangerous or defective condition existed on Defendants' premises such that they had a duty to remove or repair the condition or warn Steele of its existence.

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellants, Gary Steele and Judy Steele, and their surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

14