IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 22, 2019 Session

## JONATHAN LINKOUS v. TIKI CLUB, INC.

**Appeal from the Circuit Court for Campbell County**
**No. 16004     John D. McAfee, Judge**

_____

**No. E2019-00357-COA-R3-CV**

_____

This appeal arises from a personal injury action against the defendant restaurant after the plaintiff was allegedly injured due to a slip and fall following his use of a portable restroom facility located on the defendant's premises. The trial court granted summary judgment in favor of the defendant upon finding that no genuine issue of material fact existed that would show the defendant had either actual or constructive notice of the alleged dangerous condition. In so ruling, the trial court excluded the plaintiff's expert from testifying regarding the portable restroom facility. The plaintiff has appealed. Having determined that the trial court erred in excluding the expert witness's testimony, we vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Charmaine Nichols, Knoxville, Tennessee, and John Hunt Morgan, Harrogate, Tennessee, for the appellant, Jonathan Linkous.

Wayne A. Kline, Knoxville, Tennessee, for the appellee, Tiki Club, Inc.

## OPINION

### I. Factual and Procedural Background

The defendant, Tiki Club, Inc. ("Tiki"), at all times relevant to this appeal operated an establishment that sold food, snacks, and drinks, including alcoholic beverages, to customers. According to undisputed deposition testimony, Tiki was owned

by Jack Schafer and Ken Arendt. On its premises, Tiki maintained two portable restrooms that were located approximately three feet above the outdoor level of a floating dock and were accessible by metal stairs. The portable restroom facility in question was constructed and manufactured by Black Tie Manufacturing, Inc. ("Black Tie"), an Indiana corporation, and was purchased by Tiki on February 9, 2007. Tiki does not dispute that it is the owner of the portable restroom facility. It is further undisputed that Black Tie is not an agent of Tiki. Attendant to restaurant operations, Mr. Schafer transported the portable restroom facility from Indiana to Tiki's premises and affixed the portable restroom to the floating dock.

The incident giving rise to this cause of action occurred on August 30, 2014. The plaintiff, Jonathan Linkous, who resides in Ohio, commenced this action on August 28, 2015, by filing a complaint in the Campbell County Circuit Court ("trial court"), alleging, *inter alia*, that Tiki had breached its non-delegable duty to maintain its property in a reasonably safe condition. According to the complaint, Mr. Linkous entered the Tiki Club with several friends on a social occasion. It is undisputed that Mr. Linkous had frequented the Tiki Club restaurant and used the portable restroom facility on multiple occasions prior to August 30, 2014. Mr. Linkous alleged that at some point close in time to the incident in question, light rain or drizzle had fallen at the Tiki Club. After consuming one beer with his friends, Mr. Linkous excused himself to use one of Tiki's portable restroom facilities, which was attached to a floating dock on Tiki's premises. Mr. Linkous averred that he navigated the metal steps upward to the portable restroom without issue but that upon exiting the restroom, he slipped on the first step and fell several feet, sustaining multiple injuries. As Mr. Linkous attempted to reach for a handle or rail, he was unable to grasp any support.

According to Mr. Linkous, he remained on the ground for some time, then stood up with assistance, rejoined his friends, and thereafter stayed at the Tiki Club. Mr. Linkous later "passed out" at the Tiki Club and was transported first by ambulance to LaFollette Medical Center ("LaFollette"), then to North Knox Medical Center, and subsequently back to LaFollette. While at LaFollette, he suffered complications arising from a spike in his blood pressure as a result of morphine administered to him by medical personnel there. Mr. Linkous was subsequently transferred to the University of Tennessee Medical Center ("UT Medical Center") in Knoxville, Tennessee. Following his discharge from UT Medical Center, he traveled to his home in Ohio, where he claimed he was unable to return to his employment for approximately one month per a physician's orders.

Mr. Linkous alleged in his complaint that as a direct and proximate result of Tiki's negligence, he suffered several injuries to his ribs, back, right flank, and spine. Indicating that his injuries were permanent in nature, he claimed that he would incur additional medical expenses and other damages, including future pain and suffering. Mr. Linkous further alleged that his enjoyment of life had been substantially impaired.

According to Mr. Linkous, Tiki breached its duty to him under Tennessee law in part because the restroom facility did not comply with applicable industry and safety standards, including the International Building Code and the Americans with Disabilities Act. Mr. Linkous further claimed that it was highly foreseeable that the portable restroom's alleged defects would likely lead to serious bodily harm. In his complaint, Mr. Linkous requested $200,000 in the form of compensatory damages to compensate him "for his past and future medical expenses, loss of enjoyment of life, past and future pain and suffering, and for any other general relief or damages . . . ." Furthermore, Mr. Linkous "reserve[d] his right to amend his complaint to add a punitive damages count to his complaint as the evidence is developed." In response, Tiki filed its answer on August 11, 2016, denying Mr. Linkous's allegations and asserting a defense of, *inter alia*, lack of constructive notice of the alleged dangerous condition.

On August 29, 2018, Tiki filed a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56. In its motion, Tiki asserted that any alleged dangerous condition causing Mr. Linkous to fall "was not created by any owner, operator, or agent of [Tiki], and [Tiki] had no actual or constructive notice of any alleged dangerous condition." Tiki also contended that the portable restroom facility in question was not a structure subject to the respective building codes. In the alternative, Tiki posited that the building codes would not have imposed any duty on Tiki, but rather would have imposed a duty on the entity that constructed the portable restroom facility, Black Tie. Moreover, Tiki reiterated that it did not have actual or constructive notice of any dangerous condition of the bathroom facility because it had not received any complaints concerning the bathroom facility stairs or the stability of the structure in general prior to the current litigation. In support of its motion, Tiki attached an appendix containing an affidavit executed by Mr. Schafer; a copy of the sales form used for the purchase of the portable restroom; and depositions given by Mr. Schafer, Mr. Linkous, and Mr. Linkous's expert witness, Todd Duncan, a structural engineer with Structural Engineering Assessments, PC. On August 30, 2018, Tiki filed a statement of material facts in support of its motion for summary judgment.

In a response filed on January 7, 2019, Mr. Linkous asserted that Tiki was attempting to "blame the cause of the accident on [Black Tie]" and emphasized that "[Tiki's] agents and employees improperly installed the portable bathroom that created some of the hazards that caused Mr. Linkous to fall." Mr. Linkous claimed that Tiki, through Mr. Schafer and Mr. Schafer's son, installed the steps to the restroom facility in a way that was dangerous and that there was "sufficient evidence to present at a trial that a reasonable jury could find that [Tiki] had constructive knowledge of the dangerous condition." Mr. Linkous also contested Tiki's assertion that the referenced building codes were inapplicable.

In support of his action, Mr. Linkous had retained Mr. Duncan as an expert witness to establish the bathroom facility's alleged noncompliance with the applicable

building codes. Mr. Linkous attached several exhibits to his response, including a structural engineering assessment report completed by Mr. Duncan on September 11, 2018; various sections of the 1999 Standard Building Code ("SBC"); and an affidavit executed by Mr. Linkous's counsel, indicating that she was able to find only one building permit pertaining to Tiki and that such permit had expired in February 2017. According to Mr. Linkous, the SBC applied to Tiki's bathroom facilities "because technically it is a permanent structure and Campbell County was under the [SBC] in 1999 and thereafter." Mr. Linkous also asserted that collectively, the exhibits demonstrated that Tiki's portable restroom facility was not in compliance with the SBC.

Tiki filed a reply brief on January 9, 2019, contending that Mr. Linkous's response was untimely pursuant to Tennessee Rules of Civil Procedure 56.03 and 56.04, which require that a party opposing a motion for summary judgment file a response no later than five days before the hearing. Because there was a hearing set for January 10, 2019, and Mr. Linkous had submitted his response on January 7, 2019, Tiki argued that Mr. Linkous's response was untimely. Tiki further claimed that no genuine dispute of material fact existed because Mr. Linkous had not established that the allegedly dangerous condition was attributable to Tiki.

Following a hearing, the trial court entered an order granting summary judgment in favor of Tiki on January 25, 2019, upon finding that Mr. Linkous had not produced any proof that contradicted Mr. Schafer's sworn deposition testimony that no person employed by or associated with Tiki Club, including Mr. Schafer himself, had ever structurally altered the bathroom facility from the time it was delivered to Tiki until the event of Mr. Linkous's fall. Although the court did note that Mr. Schafer secured the portable restroom facility to the dock to prevent it from rolling, the court specifically found that Tiki had no notice, either actual or constructive, of a dangerous condition. The court further found that Mr. Linkous could not impute Mr. Duncan's expert knowledge regarding the applicable building codes and any code violation to Tiki in spite of Mr. Linkous's assertion that business owners have a duty to inform themselves of foreseeable harm to invitees. As such, the court ruled that no expert would be allowed to testify regarding the portable restroom facility in this case.

In addition, the trial court overruled Mr. Linkous's assertion that knowledge of the applicable international or standard building code would have alerted Tiki to the existence of the need to extend the railing on the steps of the restroom facility. Such a postulate, the court stated, "would in effect turn the law of premises liability in Tennessee topsy turvy." Based on the foregoing, the trial court granted Tiki's motion for summary judgment. Mr. Linkous timely appealed.

## II. Issues Presented

Mr. Linkous presents two issues for our review, which we have restated as

follows:

1. Whether the trial court erred by excluding the testimony of Mr. Linkous's expert witness.

2. Whether the trial court erred by granting summary judgment in favor of Tiki based on the court's determination that Tiki did not have constructive notice of the allegedly dangerous condition of the portable restroom facility's stairs.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue

for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265)). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

With regard to the applicable standard of review concerning the trial court's exclusion of an expert witness's testimony, our Supreme Court has explained:

Decisions regarding the admissibility of evidence are discretionary, and, therefore, the appellate courts review these decisions using the "abuse of discretion" standard. *Biscan v. Brown,* 160 S.W.3d 462, 468 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.,* 134 S.W.3d 121, 131 (Tenn. 2004). This standard applies to appellate review of decisions by a trial court when it is acting as a gatekeeper with regard to the admissibility of an expert witness's opinion testimony. Accordingly, the appellate courts review decisions regarding the qualifications, admissibility, relevancy, and competency of expert testimony using the abuse of discretion standard. *Brown v. Crown Equip. Corp.,* 181 S.W.3d 268, 273 (Tenn. 2005); *McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 257, 263-64 (Tenn. 1997).

- 6 -

This standard of review should also be used at the summary judgment stage. *General Electric Co. v. Joiner,* 522 U.S. 136, 142-43, 118 S. Ct. 512, 139 L.Ed.2d 508 (1997).

*Davis v. McGuigan,* 325 S.W.3d 149, 168-69 (Tenn. 2010). *See In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.") (internal citations omitted).

## IV. Expert Testimony Concerning Premises Liability

Regarding the trial court's determination to exclude the expert evidence, Mr. Linkous contends that Mr. Duncan's testimony would relate to, *inter alia*, "the unreasonably dangerous condition of the stairs, its top landing, [and] the stairs' handrail . . . ." Mr. Linkous also contends that Mr. Duncan's expert opinion would explain how each of these defects "contributed to [Mr. Linkous's] fall," and that, taken as a whole, Mr. Duncan's deposition testimony, and report "establish[ed] a genuine issue of material fact" sufficient to defeat Tiki's motion for summary judgment.

In its final order, the trial court determined that Mr. Duncan would not be permitted to testify regarding the standard of care that business owners owe to their patrons. The court stated in relevant part:

> The Court specifically finds [Mr. Linkous] cannot impute [Mr. Duncan's] knowledge to [Tiki] in spite of [Mr. Linkous's] assertion that business owners have a duty to inform themselves of foreseeable harm to invitees and in this case, [Tiki] failed to do so. The Court specifically finds that no expert will be allowed to testify regarding the manufactured restroom facility in this case. Based on this ruling, [Mr. Linkous] cannot establish a genuine issue of material fact and [Tiki] is entitled to judgment as a matter of law.

This case involves a claim of premises liability, which is based in negligence. As this Court has previously explained with respect to such claimed liability:

> Negligence cannot be presumed by the mere happening of an injury or accident. *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971). Simply put, "[p]eople fall all the time but this does not perforce mean that the fall was due to another's negligence[.]" *Anderson v. Wal-Mart Stores East, L.P.*, No. 2:12-0037, 2013 WL 3010696, at *3 (M.D. Tenn. June 18, 2013). A plaintiff must establish the following elements to

prove a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care, amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).

> Owners and occupiers of business premises are required to exercise due care under all the circumstances, but they are not insurers of the safety of their customers or the general public. . . . The operator of a place of business has a duty to maintain the premises "in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired." *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 629-30 (Tenn. Ct. App. 2009) (quoting *Psillas* [*v. Home Depot, U.S.A., Inc.*], 66 S.W.3d [860,] at 864). However, the property owner is not responsible for removing or warning against "conditions from which no unreasonable risk was to be anticipated." *Parker* [*v. Holiday Hospitality Franchising, Inc.*], 446 S.W.3d [341,] 350 [(Tenn. 2014)].

*Steele v. Primehealth Med. Ctr., P.C.*, No. W2015-00056-COA-R3-CV, 2015 WL 9311846, at *5 (Tenn. Ct. App. Dec. 22, 2015). As our Supreme Court has further explained:

> In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.

*Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004).

Mr. Linkous argues that Mr. Duncan's expert testimony would be relevant and necessary to show the improper installation and use of the portable restroom facility by Tiki. Mr. Duncan specifically identified nine "items of concern" following his site visit to the Tiki Club, summarizing these concerns in his report as follows:

> Based upon the noted observations, the referenced landing and stairs are not code compliant and are considered to be hazardous. The awkward 7" high step to reach the landing immediately upon exiting the [portable restroom] facility propels the unsuspecting occupant forward and onto an excessively

sloped landing, which increases all momentum toward the base of the steps. The very narrow treads, with the excessive riser height, forces an unnatural cadence and stride in maneuvering down the steps. The combination of code violations results in an off[-]balance condition for the occupants trying to maneuver the referenced stairs. It is our understanding the aluminum treads did not include the slip[-resistant] strips that were observed at the time of our visit. A bare aluminum surface will have significantly less slip resistance making the noted steps even more hazardous. The absence of the required handrail extension eliminated the third balance point that will allow the occupant to catch and stabilize themselves. Without the handrail extension, the expectation of falling is high. <u>The poor installation of the [portable restroom facility] onto the floating platform exacerbated the issues with excessive slope on the treads and landing</u>, as well as, significantly exceeding the maximum riser height and variation in riser height. Section 1001.1.1 (SBC 1999) states, "*Provisions of this chapter shall govern the design, construction and arrangement of elements to provide a safe means of egress from buildings and structures.*" The noted conditions of the referenced stairs, landing and exit door do not meet the provisions of Chapter 10 and are considered improper and unsafe.

(Underlined emphasis added.) Mr. Duncan's deposition testimony corroborated his report with regard to the installation and use of the restroom facility. As Tiki admitted in its statement of material facts, Tiki installed the portable restroom facility by "securing the bathroom structure to the marina dock via a steel frame."

The Tennessee Supreme Court has previously explained the trial court judge's role with regard to expert testimony as follows:

> An essential role of the judge, as the neutral arbiter in the trial, is to function as a "gatekeeper" with regard to the admissibility of expert testimony, permitting only expert opinions that are based on "relevant scientific methods, processes, and data, and not upon [the] expert's mere speculation." *State v. Scott*, 275 S.W.3d 395, 401-02 (Tenn. 2009) (quoting *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997)) (citing *State v. Copeland*, 226 S.W.3d 287, 300-01 (Tenn. 2007)). Specifically, the admission of expert proof is governed by Tennessee Rule of Evidence 702, which explains that a qualified expert witness "may testify in the form of an opinion or otherwise" if the expert has "scientific, technical, or other specialized knowledge [that] will *substantially assist* the trier of fact to understand the evidence or to determine a fact in issue." (Emphasis in original.) Tennessee Rule of Evidence 703 provides further guidance:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence…. *The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness*.

(Emphasis added). "While a trial court's role as gatekeeper is critical, it is not unconstrained," *Scott*, 275 S.W.3d at 404, and "[a] trial court abuses its discretion when it … excludes testimony that meets the requirements of Rule[s] 702 and 703," *Shipley v. Williams*, 350 S.W.3d 527, 552 (Tenn. 2011).

Read together, Rules 702 and 703 "require a determination as to the scientific validity or reliability of the expert testimony," because only valid scientific evidence "will substantially assist the trier of fact to determine a fact in issue" and will be based upon "facts and data [that have been] reviewed and found to be trustworthy by the trial court." *McDaniel*, 955 S.W.2d at 265. In *McDaniel*, this Court provided a non-exclusive list of factors to aid trial courts in the consideration of whether expert testimony qualifies as reliable and is therefore admissible under the rules:

(1) whether [the] evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether . . . the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

*Id*. Rigid application of the *McDaniel* factors, however, is not required; the reliability of the testimony and whether it provides substantial assistance to the jury [to] serve as the essential guidelines for the determination of admissibility. *Id*. (declining to expressly adopt the federal framework for evaluating expert testimony and instructing Tennessee trial courts that they "may consider" the *McDaniel* factors within the framework of Rules 702 and 703); *see also Copeland*, 226 S.W.3d at 302. Ultimately, "[t]he objective of the trial court's gatekeeping function is to ensure that 'an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor

- 10 -

that characterizes the practice of an expert in the relevant field.'" *Brown v. Crown Equip. Corp.*, 181 S.W.3d at 275 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). If the expert testimony qualifies as admissible, the trial court's gatekeeping function is completed, as "[t]he weight of the theories and the resolution of legitimate but competing expert opinions are matters entrusted to the trier of fact." *Id*. (citing *McDaniel*, 955 S.W.2d at 265).

*Payne v. CSX Transp., Inc.*, 467 S.W.3d 413, 454-55 (Tenn. 2015) (footnotes omitted; emphasis added); *see Littleton v. TIS Ins. Servs., Inc.*, No. E2018-00477-COA-R3-CV, 2019 WL 141517, at *4-5 (Tenn. Ct. App. Jan. 1, 2019) (quoting *Payne* with approval).

The issue in *Littleton*, as here, was whether the trial court abused its discretion in excluding testimony at the summary judgment stage by the plaintiff's expert regarding the standard of care. In *Littleton*, the plaintiffs appealed the trial court's order excluding their expert's opinion regarding the applicable standard of care in a negligence suit. *Littleton*, 2019 WL 141517 at *2. Following the exclusion of their expert, the plaintiffs conceded that they could not present every necessary element of their negligence claim, including the applicable standard of care. *Id*. Consequently, the trial court granted the defendant's motion for summary judgment. *Id*. On appeal, this Court concluded that the trial court abused its discretion when it excluded the expert's proof because the expert had "sufficient experience . . . to render him qualified to opine" on the standard of care. *Id*. at *10. Despite the fact that the expert had no recent experience with the specific issue, this Court determined that he possessed "the necessary qualifications to opine as to those more general issues" under Tennessee Rules of Evidence 702 and 703. *Id*. Thus, the plaintiffs, through the use of their expert, were able to meet their burden to defeat summary judgment. *Id*. at *11.

Furthermore, we find this Court's decision in *Frazer v. Horton Automatics*, No. E2006-00102-COA-R9-CV, 2006 WL 3001013 (Tenn. Ct. App. Oct. 23, 2006), to be particularly instructive in our analysis. In *Frazer*, the plaintiff sued the defendant medical office under a premises liability theory of negligence after she sustained injuries when the automatic entrance doors to the office closed before she had ambulated through the doorway with her walker, causing the plaintiff to fall. *Id*. at *1. The defendant filed a motion for summary judgment, asserting, *inter alia*, that it did not manufacture, install, maintain, repair, or set the controls for the automatic doors, nor had it ever modified or altered the doors. *Id*. The defendant further alleged, as Tiki has in this case regarding the portable restroom facility, that it did not have actual or constructive knowledge that the automatic doors were malfunctioning or that they posed an unreasonable risk of harm because no prior incidents or injuries had occurred as a result of the doors. *Id*. The trial court granted the defendant's motion, holding that the defendant "had no duty relative to the automatic doors." *Id*. at *5. This Court granted interlocutory review and vacated the trial court's grant of summary judgment in favor of the defendant. *Id*. at *7. We note

that the defendant in *Frazer* did not install the automatic doors that allegedly caused the plaintiff's injuries, unlike Tiki in the case at bar, which did install the portable restroom facility that allegedly caused the plaintiff's injuries. This Court held in *Frazer* that the business had a duty relative to the automatic doors despite the fact that the defendant did not choose, manufacture, or install the doors. *Id*. In so holding, this Court found that there was sufficient expert testimony proffered by the plaintiff to establish a genuine issue of material fact, relying upon such expert testimony in its analysis. *Id*.

As noted above, we review the trial court's decisions regarding the qualifications, admissibility, relevancy, and competency of expert testimony using the abuse of discretion standard. *See Brown,* 181 S.W.3d at 273. In the context of excluding expert testimony, "[a] trial court abuses its discretion when it . . . excludes testimony that meets the requirements of [Tennessee Rules of Evidence] 702 and 703." *Shipley*, 350 S.W.3d at 552. In its order granting summary judgment to Tiki, the trial court did not reference any evidentiary rule in support of its determination that Mr. Duncan's testimony would not be considered. Furthermore, the trial court did not follow the "essential guidelines" set forth in *Payne* and its progeny by making a threshold finding of the reliability of Mr. Duncan's testimony and whether it would provide substantial assistance to a jury. *See Payne*, 467 S.W.3d at 455.

If determined qualified, admissible, relevant, and competent, Mr. Duncan's expert opinion regarding the applicability of the SBC could create a dispute of material fact with regard to the applicable standard of care and Tiki's constructive knowledge of the alleged defect. Specifically, Mr. Duncan's testimony regarding the installation and use of the portable restroom facility could assist the trier of fact in determining the duty, breach, and causal elements of negligence. Although Mr. Linkous acknowledges the general rule that noncompliance with a regulatory code is not conclusive of a defendant's negligence, he asserts that experts are routinely used in premises liability cases in Tennessee and that these experts generally rely on regulatory codes and industry standards when testifying. We agree. *See e.g.*, *Brown v. Mercer-Defriese*, No. E2015-00755-COA-R3-CV, 2016 WL 286456, at \*4 (Tenn. Ct. App. Jan. 25, 2016) ("Generally speaking, an allegedly dangerous or defective condition's compliance with a regulatory code is relevant and often probative, but not conclusive, on the question of the defendant's negligence."); *Steele*, 2015 WL 9311846, at \*2 (noting, in a premises liability action, the inclusion of expert witness testimony as to compliance with applicable building codes). Thus, although not conclusive as to Tiki's alleged negligence, Mr. Duncan's testimony that the portable restroom facility's installation and use were not compliant with the SBC may be probative on the question of Tiki's negligence and constructive knowledge of the alleged defect. *See Brown*, 2016 WL 286456 at \*4.[1]

---

[1] As Mr. Linkous points out, the transcript reveals some confusion during the summary judgment hearing concerning whether allowing an expert witness to testify in this case would convert the negligence theory to a strict liability theory. However, we determine that such testimony could support a theory of

- 12 -

Mr. Linkous also asserts that the trial court erred by relying on this Court's order denying an application for interlocutory appeal, pursuant to Tennessee Rule of Appellate Procedure 9, in an unrelated premises liability case, *Polly Ann Brown v. Indian River Marina, Inc.*, No. E2018-01238-COA-R9-CV ("*Indian River*"). In *Indian River*, both parties filed Rule 9 applications for interlocutory appeal to this Court after the trial court had excluded expert witness testimony and granted permission for interlocutory appeal. This Court denied the Rule 9 applications, determining that the case was "not an appropriate case in which to grant interlocutory review." In ruling from the bench in the instant action, the trial court explained that its decision in *Indian River* had been "affirmed" by this Court as follows:

> THE COURT: I just recently had a case go up to the Court of Appeals, something similar to this [case]. . . . Indian River Boat Dock [*Indian River*]. . . . It was a premises liability case and there [were] two issues that I had to resolve . . . [one] was a question of whether or not [the defendants] had knowledge [of the alleged defect]. . . . [T]he plaintiffs wanted to bring in experts to testify that [the alleged defect] was not structurally built correctly and I wouldn't let them do that and I said that would fundamentally change premises liability law in the State of Tennessee if you're allowed to do that. . . . I said they can't [present experts to testify] and so it goes up to the Court of Appeals. . . . [The parties] asked me for interlocutory -- well sure. . . . So [the case] goes up [on interlocutory] and it's affirmed on my rulings and [the parties] appealed to the Supreme Court and the State Supreme Court denied to hear it.

As this Court has previously elucidated with regard to our review of interlocutory appeals:

> Rule 9 provides that an interlocutory appeal may be taken from an *order* entered in the trial court that is not otherwise appealable. *See* Tenn. R. App. P. 9 (providing that "an appeal by permission may be taken from an interlocutory *order*" and requiring the trial court to state "the legal criteria making the *order* appealable") (emphasis added). Further, this Court is only authorized to correct *errors* made by the trial court. *See* Tenn. R. Ct. App. 6(a)(1)-(3) (requiring statements in appellate briefs of the "alleged *erroneous action* of the trial court," "how such alleged *error* was seasonably called to the attention of the trial court," and how the "appellant was prejudiced by such an alleged *error*") (emphasis added); *see also Alsip v. Johnson City Med. Ctr.*, No. E2004-00831-COA-R9-CV, 2005 WL

---

negligence as to the premises. Moreover, as noted above, expert testimony concerning compliance with building codes is relevant but not conclusive. *See Brown*, 2016 WL 286456, at *4.

- 13 -

1536192, at *7 (Tenn. Ct. App. June 30, 2005) (describing this Court as "an error-correcting intermediate appellate court").

*Farmers Mut. of Tenn. v. Atkins*, No. E2011-01903-COA-R9-CV, 2012 WL 982998, at *4 (Mar. 21, 2012). This Court's denial of the Rule 9 applications for interlocutory appeal in the unrelated appeal procedurally remanded the certified issues to the trial court without adjudicating the merits of the trial court's ruling. *See* Tenn. R. App. P. 9. Thus, to say that this Court's denial of the parties' Rule 9 applications in *Indian River* "affirmed" the trial court's ruling on any issues in that case would be procedurally incorrect.

In the case at bar, because the trial court failed to properly fulfill its gatekeeping function by not making a sufficient determination as to whether Mr. Duncan's testimony manifests the proper qualifications, admissibility, relevancy, and competency under Tennessee Rules of Evidence 702 and 703, we conclude that the trial court erred by excluding testimony that could meet the requirements of Rules 702 and 703. *See Shipley,* 350 S.W.3d at 552.

## V. Grant of Summary Judgment

Based on his argument that the trial court erred in excluding expert witness testimony, Mr. Linkous also contends that the trial court erred in granting summary judgment in favor of Tiki. As this Court has recently summarized:

> Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. This Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

*Littleton*, 2019 WL 141517 at *10.

In the instant action, the trial court's decision to grant summary judgment in favor

of Tiki was predicated on Mr. Linkous's inability to demonstrate Tiki's constructive knowledge of the alleged defects through expert evidence. Because we have concluded that the trial court erred by excluding the expert witness testimony without sufficient findings, we vacate the trial court's grant of summary judgment in favor of Tiki. We remand this matter to the trial court for further proceedings consistent with this opinion, including a determination of the qualifications, admissibility, relevancy, and competency of Mr. Duncan's expert testimony pursuant to Tennessee Rules of Evidence 702 and 703.

## VI. Conclusion

For the reasons stated above, we vacate the trial court's grant of summary judgment in favor of Tiki. We remand to the trial court for further proceedings consistent with this opinion, including a determination of the admissibility of Mr. Duncan's expert testimony pursuant to Tennessee Rules of Evidence 702 and 703. Costs on appeal are assessed to the appellee, Tiki Club, Inc.

_____
THOMAS R. FRIERSON, II, JUDGE